## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>Canyon National Bank | DEFENDANTS<br>Michael J. Corliss, an individual, and Martin D. Waiss, an individual, in their capacities as co-trustees of the Evergreen Capital Trust dated January 1, 2000; Evergreeen Capital Partners, LLC, a Washington Limited Liability Company, and Does 1-25 |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>See Attachment | Attorneys (If Known)<br><br>See Attachment |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Removal - 28 USC 1441(b) and 12 USC 1819(b)(2)(B) - Federal Deposit Insurance Corporation,as Receiver of Canyon National Bank, is a Cross-Defendant

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY | TORTS – PERSONAL INJURY | TORTS – PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☑ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## ED CV 11 - 01013   VAP   (AGRx)

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County, California | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Unknown | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County, California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Julie D. Klein for*    Date: *6/29/11*
*Cross-Defendant Federal Deposit Ins Corp as Receiver of Canyon Nat Bank*

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## Attachment to Civil Cover Sheet

<u>Attorneys for Plaintiff Pacific Premier Bank (which substituted in as plaintiff in place of Canyon National Bank on complaint):</u>

Shaun M. Murphy
SLOVAK, BARON & EMPEY, LLP
1800 E. Tahquitz Canyon Way
Palm Springs, CA 92262
Ph: (760) 322-2275
Fax: (760) 322-2107
Email: murphy@sbelawyers.com

<u>Attorneys for Defendants and Cross-Complainants:</u>

Matthew De Vega, Esq.
CAPPELLO & NOEL LLP
831 State Street
Santa Barbara, CA 93101
Ph: (805) 564-2444
Fax: (805) 965-5950
Email:mdavega@cappellonoel.com

<u>Attorneys for Cross-Defendant Federal Deposit Insurance Corporation as Receiver of Washington Mutual Bank:</u>

Gallagher & Moore
Leslie T. Riasanovsky, Of Counsel
2 Park Plaza, Ste. 680
Irvine, CA 92614
Ph: (949) 955-9121
Fax: (949) 955-2875
Email: lr@gallagherandmoore.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is Alicia G.  Rosenberg.

The case number on all documents filed with the Court should read as follows:

## EDCV11- 1013 VAP  (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [_] **Western Division** | [_] **Southern Division** | [X] **Eastern Division** |
|---|---|---|
| **312 N. Spring St., Rm. G-8** | **411 West Fourth St., Rm. 1-053** | **3470 Twelfth St., Rm. 134** |
| **Los Angeles, CA 90012** | **Santa Ana, CA 92701-4516** | **Riverside, CA 92501** |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Gallagher & Moore
Leslie T. Riasanovsky, Of Counsel (SBN 121111)
Email: lr@gallagherandmoore.com
Frederick C. Moore, Esq. (SBN 122652)
Email: fmoore@gallagherandmoore.com
2 Park Plaza, Ste. 680
Irvine, California 92614
Tel: (949) 955-9121
Fax: (949) 955-2875

Attorneys for cross-defendant FEDERAL DEPOSIT
INSURANCE CORPORATION, as Receiver of
Canyon National Bank

FILED
CLERK, U.S. DISTRICT COURT

JUN 3 0 2011

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANYON NATIONAL BANK, a Federally Chartered Commercial Bank,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. CORLISS, an individual, and MARTIN D. WAISS, an individual, in their capacities as Co-Trustees of the EVERGREEN CAPITAL TRUST DATED JANUARY 1, 2000; EVERGREEN CAPITAL PARTNERS L.L.C., a Washington Limited Liability Company; and DOES 1-25, inclusive,<br><br>Defendants.<br><br>MICHAEL J. CORLISS, an individual, and MARTIN D. WAISS, an individual, in their capacities as Co-Trustees of the EVERGREEN CAPITAL TRUST DATED JANUARY 1, 2000; EVER-GREEN CAPITAL PARTNERS,L.L.C.,<br><br>Cross-Complainants,<br><br>vs.<br><br>CANYON NATIONAL BANK, a Federally Chartered Commercial Bank, and ROES 1 through 25, inclusive,<br><br>Defendants. | Case No. **ED CV 11 - 01013** /AP (AGRx)<br>(Formerly Case No. INC 1100035 in Riverside County Superior Court, Indio Division)<br><br>NOTICE OF REMOVAL OF CIVIL ACTION BY CROSS-DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF CANYON NATIONAL BANK |

*Canyon National Bank v. Michael J. Corliss, et al.*
Notice of Removal of Civil Action by Cross-Defendant Federal Deposit Insurance Corporation, As Receiver of Canyon National Bank

1

1

<div align="center">NOTICE OF REMOVAL</div>

2

3    Pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1441, the Federal Deposit

4    Insurance Corporation ("**FDIC**"), in its capacity as receiver of Canyon National Bank ("**FDIC-**

5    **Receiver**"), hereby removes the above-captioned lawsuit from the Riverside County Superior

6    Court, Indio Division ("**State Court**"), in which it is currently pending, to the United States

7    District Court for the Central District of California.  As grounds for the removal of this case,

8    FDIC-Receiver states as follows:

9

<div align="center">BACKGROUND</div>

10    1.    On February 11, 2011, the Office of the Comptroller of the Currency ("**OCC**")

11    closed Canyon National Bank and appointed the FDIC as receiver of Canyon National Bank.

12    True and correct copies of the OCC's press release of the appointment of the FDIC-Receiver and

13    "Update to Notice of Financial Institutions for Which the Federal Deposit Insurance Corporation

14    Has Been Appointed Either Receiver, Liquidator, or Manager" published in Volume 76, at pages

15    10362-10363, of the Federal Register, are attached hereto as Exhibit "A" hereto and incorporated

16    by this reference.

17    2.    As a result of its appointment as receiver of Canyon National Bank, the FDIC-

18    Receiver succeeded to all rights, titles, and powers and privileges of Canyon National Bank

19    pursuant to 12 U.S.C. § 1821 (c)(3)(A).  See also 12 U.S.C. § 1821(d)(2)(A)(i) (providing that

20    the FDIC as receiver of a failed institution succeeds to all of rights, title, and interests to books,

21    records, and assets of the institution).

22    3.    On February 11, 2011, the FDIC-Receiver entered into a Purchase and

23    Assumption Agreement ("**P&A Agreement**") with the FDIC and Pacific Premier Bank, pursuant

24    to which the FDIC-Receiver assigned certain assets to Pacific Premier Bank and Pacific Premier

25    Bank agreed to assume certain liabilities specified in the P&A Agreement.  The FDIC-Receiver

26    retained all liabilities of Canyon National Bank that were not expressly assumed by Pacific

27    Premier Bank.

28

*Canyon National Bank v. Michael J. Corliss, et al.*
Notice of Removal of Civil Action by Cross-Defendant Federal Deposit Insurance Corporation, As
Receiver of Canyon National Bank

<div align="center">2</div>

4.      On January 3, 2011, prior to its closure, Canyon National Bank filed a Complaint For: 1. Breach of Contract (Promissory Note, Guaranty); 2. Money Lent; and 3. Account Stated (**"Complaint"**) in the State Court against Michael J. Corliss, an individual, and Martin D. Waiss, an individual, in their capacities as co-trustees of the Evergreen Capital Trust dated January 1, 2000, Evergreen Capital Partners, L.L.C., a Washington limited liability company (all of whom are referred to collectively as the **"Evergreen Parties"**), and Does 1-25, inclusive.

5.      On February 28, 2011, the Evergreen Parties filed an answer to the Complaint and a Cross-Complaint For: (1) Fraudulent Misrepresentation; (2) Negligent Misrepresentation; (3) Breach of Oral Contract; (4) Breach of Implied in Fact Contract; (5) Breach of the Covenant of Good Faith and Fair Dealing; and (6) Promissory Estoppel (**"Cross-Complaint"**) against Canyon National Bank and Roes 1 through 25, inclusive.

6.      Pursuant to the P&A Agreement, the FDIC-Receiver assigned to Pacific Premier Bank the promissory note which is the subject of the Complaint.  On June 9, 2011, upon the motion of Pacific Premier Bank, the State Court issued an order substituting Pacific Premier Bank as the plaintiff, in place of Canyon National Bank, on the Complaint.

7.      The FDIC-Receiver did not assign, and Pacific Premier Bank, did not assume the liability, if any, of Canyon National Bank for the claims asserted in the Cross-Complaint. Accordingly, the FDIC-Receiver contends that Canyon National Bank's liability for the claims asserted in the Cross-Complaint may only be asserted against the FDIC-Receiver and that, as a matter of law, the Evergreen Parties (as Cross-Complainants) must comply with the administrative claims procedure set forth at 12 U.S.C. Section 1821(d)(3)-(13) before they may proceed with the Cross-Complaint. 12 U.S.C. Section 1821(d)(13)(D); *Henderson v. Bank of New England*, 986 F.2d 319 (9th Cir. 1993); *McCarthy v. FDIC*, 348 F.3d 1075 (9th Cir. 2003) (Until a claimant exhausts the administrative claims process, no court has jurisdiction over the claimant's claims).

8.      On June 9, 2011, upon the motion of the FDIC-Receiver, the State Court issued an order adding the FDIC-Receiver as a cross-defendant to the Cross-Complaint in the State

*Canyon National Bank v. Michael J. Corliss, et al.*
Notice of Removal of Civil Action by Cross-Defendant Federal Deposit Insurance Corporation, As Receiver of Canyon National Bank

3

1  Court action.

2                          BASIS FOR REMOVAL

3       9.      This case is removable pursuant to 28 U.S.C. § 1441(b) which provides in

4  relevant part:

5              Any civil action of which the district courts have original

6              jurisdiction founded on a claim or right arising under the

7              Constitution, treaties or laws of the United States shall be

8              removable without regard to the citizenship or residence of the

9              parties.

10      10.     Any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise

11  under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A); *see also Bullion Services, Inc.*

12  *v. Valley State Bank*, 50 F.3d 705 707 (9th Cir. 1995).  When the FDIC is a party, the entire

13  action is deemed to arise under the laws of the United States. *See Buchner v. FDIC*, 981 F.2d

14  816, 819 (5th Cir. 1993).

15      11.     In addition, the FDIC has a statutory right to remove cases in which it is a party

16  from State Court to Federal Court pursuant to the Financial Institution Reform, Recovery, and

17  Enforcement Act of 1989, Pub. L. No. 101-73, § 209, 103 Stat. 183 et seq.  Specifically, 12

18  U.S.C. § 1819(b)(2)(B) provides in pertinent part:

19              (B)  Removal

20              Except as provided in subparagraph (D), the Corporation may,

21              without bond or security, remove any action, suit, or proceeding

22              from a State court to the appropriate United States district court

23              before the end of the 90-day period beginning on the date of the

24              action, suit, or proceeding is filed against the Corporation or the

25              Corporation is substituted as a party.

26      12.     The instant Notice of Removal is being brought within the 90-day period of

27  § 1819(b)(2)(B) from the date FDIC-Receiver was added as a cross-defendant on the Cross-

28

---

*Canyon National Bank  v. Michael J. Corliss, et al.*
Notice of Removal of Civil Action by Cross-Defendant Federal Deposit Insurance Corporation, As
Receiver of Canyon National Bank

1    Complaint and thereby became a party in the State Court action.

2         13.    Because the FDIC-Receiver is now a party to the State Court action, the entire

3    State Court action must be removed to the United States District Court for the Central District of

4    California.  Because FDIC-Receiver has an independent statutory right to remove, FDIC-

5    Receiver may do so without the joinder of other parties.  *Davis v. FSLIC* (5th Cir. 1989) 879

6    F.2d 1288, 1289.

7         14.    Pursuant to 28 U.S.C. § 1446(d), the FDIC-Receiver will promptly serve notice of

8    the filing of this removal to all parties of record in the State Court action and to the Clerk of the

9    Riverside County Superior Court, Indio Division.

10        15.    Venue properly lies with this Court pursuant to 28 U.S.C. § 1441(a) and 1446(a)

11   and 12 U.S.C. §1819(b)(2)(B), as this action is presently pending in the Riverside County

12   Superior Court, Indio Division and arose in Riverside County, California.

13        16.    In accordance with 28 U.S.C. § 1446(a), copies of the following Exhibits are

14   attached to this Notice:

15        Exhibit "B"    -    Summons

16        Exhibit "C "   -    Complaint For: 1. Breach of Contract (Promissory Note,

17                            Guaranty); 2. Money Lent; and 3. Account Stated

18        Exhibit "D"    -    Answer to Complaint

19        Exhibit "E"    -    Cross-Complaint For: (1) Fraudulent Misrepresentation; (2)

20                            Negligent Misrepresentation; (3) Breach of Oral Contract;

21                            (4) Breach of Implied in Fact Contract; (5) Breach of the Covenant

22

23

24

25

26

27

28

*Canyon National Bank  v. Michael J. Corliss, et al.*
Notice of Removal of Civil Action by Cross-Defendant Federal Deposit Insurance Corporation, As
Receiver of Canyon National Bank
                                   5

1      of Good Faith and Fair Dealing; (6) Promissory Estoppel.

2      Exhibit "F"    -        Minute order adding FDIC-Receiver as a Cross-Defendant to the

3                              Cross-Complaint.

4          13.    Additional documents from the State Court Action will be filed as attachments to

5  a supplement to this Notice of Removal.

6

7  Dated:  June 29, 2011                          Respectfully submitted,

8                                                 Gallagher & Moore

9

10                                         By
                                              Leslie T. Riasanovsky, Of Counsel
11                                            Attorneys for cross-defendant FEDERAL
                                              DEPOSIT INSURANCE CORPORATION,
12                                            as Receiver of CANYON NATIONAL
                                              BANK

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Canyon National Bank  v. Michael J. Corliss, et al.*
Notice of Removal of Civil Action by Cross-Defendant Federal Deposit Insurance Corporation, As
Receiver of Canyon National Bank

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"



Comptroller of the Currency
Administrator of National Banks

US Department of the Treasury

**NR 2011-17**

**FOR IMMEDIATE RELEASE**
**February 11, 2011**

Contact: Kevin M. Mukri
(202) 874-5770

## OCC Appoints Receiver for Canyon National Bank

WASHINGTON — The Office of the Comptroller of the Currency (OCC) today appointed the Federal Deposit Insurance Corporation (FDIC) as receiver for Canyon National Bank, Palm Springs, California. As of December 31, 2010, the bank had approximately $210 million of total assets.

The OCC acted after finding that the bank had experienced substantial dissipation of assets and earnings due to unsafe and unsound practices. The OCC also found that the bank incurred losses that depleted its capital and there is no reasonable prospect that the bank will become adequately capitalized without Federal assistance.

Information about the FDIC's resolution of the bank will be released later by the FDIC.

## Press Releases

## Pacific Premier Bank, Costa Mesa, California, Assumes All of the Deposits of Canyon National Bank, Palm Springs, California

**FOR IMMEDIATE RELEASE**
**February 11, 2011**

**Media Contact:**
**Greg Hernandez (202) 898-6984**
**Cell: (202) 340-4922**
**Email: ghernandez@fdic.gov**

Canyon National Bank, Palm Springs, California, was closed today by the Office of the Comptroller of the Currency, which appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. To protect the depositors, the FDIC entered into a purchase and assumption agreement with Pacific Premier Bank, Costa Mesa, California, to assume all of the deposits of Canyon National Bank.

The three branches of Canyon National Bank will reopen during their normal business hours beginning Saturday as branches of Pacific Premier Bank. Depositors of Canyon National Bank will automatically become depositors of Pacific Premier Bank. Deposits will continue to be insured by the FDIC, so there is no need for customers to change their banking relationship in order to retain their deposit insurance coverage up to applicable limits. Customers of Canyon National Bank should continue to use their existing branch until they receive notice from Pacific Premier Bank that it has completed systems changes to allow other Pacific Premier Bank branches to process their accounts as well.

This evening and over the weekend, depositors of Canyon National Bank can access their money by writing checks or using ATM or debit cards. Checks drawn on the bank will continue to be processed. Loan customers should continue to make their payments as usual.

As of December 31, 2010, Canyon National Bank had approximately $210.9 million in total assets and $205.3 million in total deposits. In addition to assuming all of the deposits of the failed bank, Pacific Premier Bank agreed to purchase essentially all of the assets.

Customers who have questions about today's transaction can call the FDIC toll-free at 1-800-930-5169. The phone number will be operational this evening until 9:00 p.m., Pacific Standard Time (PST); on Saturday from 9:00 a.m. to 6:00 p.m., PST; on Sunday from noon to 6:00 p.m., PST; and thereafter from 8:00 a.m. to 8:00 p.m., PST. Interested parties also can visit the FDIC's Web site at http://www.fdic.gov/bank/individual/failed/canyonstate.html.

The FDIC estimates that the cost to the Deposit Insurance Fund (DIF) will be $10.0 million. Compared to other alternatives, Pacific Premier Bank's acquisition was the least costly resolution for the FDIC's DIF. Canyon National Bank is the eighteenth FDIC-insured institution to fail in the nation this year, and the first in California. The last FDIC-insured institution closed in the state was First Vietnamese American Bank, Westminster, on November 5, 2010.

# # #

Congress created the Federal Deposit Insurance Corporation in 1933 to restore public confidence in the nation's banking system. The FDIC insures deposits at the nation's 7,760 banks and savings associations and it promotes the safety and soundness of these institutions by identifying, monitoring and addressing risks to which they are exposed. The FDIC receives no federal tax dollars – insured financial institutions fund its operations.

FDIC press releases and other information are available on the Internet at www.fdic.gov, by subscription electronically (go to www.fdic.gov/about/subscriptions/index.html) and may also be

Case 5:11-cv-01043-ODW-AGR   Document 1   Filed 06/30/11   Page 14 of 106   Page ID #:17

obtained through the FDIC's Public Information Center (877-275-3342 or 703-562-2200). **PR-35-2011**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "B"

760 779 1790          JOSEPH A GIBBS                                    05:18:03 p.m.   01-03-2011          2 /51

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ADDITIONAL PARTIES ATTACHMENT FORM IS ATTACHED

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CANYON NATIONAL BANK, a Federally-Chartered Commercial
Bank

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |
| **FILED** |
| **01/04/2011** |
| **C. RIOS** |
| **Superior Court of California** |
| **County of Riverside** |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
| --- | --- |
| *(El nombre y dirección de la corte es):* Riverside County Superior Court | *(Número del Caso):* |
| 46-200 Oasis Street | **INC 1100035** |
| Indio, California 92201 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joseph A. Gibbs & Associates, 74-900 Highway 111, St. 222, Indian Wells, CA 92210; (760)779-1790

| **DATE:** *(Fecha)* **01-04-2011** | Clerk, by *(Secretario)*  , Deputy *(Adjunto)* |
| --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
| --- | --- | --- |
| Judicial Council of California | | *www.courtinfo.ca.gov* |
| SUM-100 [Rev. July 1, 2009] | | |

760 779 1790        JOSEPH A GIBBS                    05:18:56 p.m.    01−03−2011        3 /51

**SUM-200(A)**

| SHORT TITLE:<br>CANYON NATIONAL BANK vs MICHAEL J. CORLISS, et al. | CASE NUMBER:<br>INC 1100035 |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff      ☑ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

MICHAEL J. CORLISS, an individual, and MARTIN D. WAISS, an individual, in their capacities as
co-trustees of the EVERGREEN CAPITAL TRUST DATED JANUARY 1, 2000;
EVERGREEN CAPITAL PARTNERS L.L.C., a Washington Limited Liability Company;
and DOES 1-25, Inclusive

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

## ADDITIONAL PARTIES ATTACHMENT
**Attachment to Summons**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "C"

**JOSEPH A. GIBBS**, SBN 82118
**SEAN M. SWINFORD**, SBN 239283
Joseph A. Gibbs & Associates
74900 Highway 111, Suite 222
Indian Wells, California  92210
Telephone: (760)779-1790
Facsimile: (760) 779-1780

**FILED**

**01/03/2011**

**C. RIOS**

Superior Court of California
County of Riverside

Attorneys for Plaintiff Canyon National Bank, a Federally-Chartered Commercial Bank

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF RIVERSIDE - INDIO BRANCH

| | |
|---|---|
| CANYON NATIONAL BANK, a Federally-Chartered Commercial Bank,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL J. CORLISS, an individual, and MARTIN D. WAISS, an individual, in their capacities as Co-Trustees of the EVERGREEN CAPITAL TRUST DATED JANUARY 1, 2000; EVERGREEN CAPITAL PARTNERS L.L.C., a Washington Limited Liability Company; and DOES 1-25, Inclusive,<br><br>Defendants. | CASE NO.  INC 1 1 0 0 0 3 5<br>[Assigned For All Purposes to<br>Hon. Judge Harold W. Hopp]<br><br>**COMPLAINT FOR:**<br><br>1.    Breach of Contract<br>        (Promissory Note, Guaranty);<br>2.    Money Lent; and<br>3.    Account Stated<br><br>[Amount Demanded Exceeds $25,000]<br><br>**DEMAND FOR JURY TRIAL** |

Comes now Plaintiff, Canyon National Bank, a Federally-Chartered Commercial Bank ("Canyon" or "Plaintiff"), and alleges as follows:

### COMMON ALLEGATIONS

1.      Canyon is, and at all times mentioned was, a Federally-Chartered Commercial Bank, doing business in and authorized to do business in the County of Riverside, State of California.

2.      Defendants Michael J. Corliss, an individual, and Martin D. Waiss, an individual, are named herein in their capacities as Co-Trustees of the Evergreen Capital Trust dated January 1, 2000 ("Trust").  At all times relevant, the Trust was doing business in the State of California.

---

Complaint                                              -1-

1         3.    Upon information and belief, Defendant Evergreen Capital Partners, L.L.C.

2    ("Evergreen") is a Washington Limited Liability Company, doing business in and authorized to do

3    business in the State of California.

4         4.    The true names and capacities, whether individual, associate, corporate, or otherwise

5    of DOES 1 through 25, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by

6    such fictitious names. Plaintiff will seek leave to amend this Complaint when their true names and

7    capacities are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the

8    fictitiously named Defendants is responsible in some manner for the occurrences and damages

9    alleged herein.

10        5.    The named Defendants and DOE Defendants (hereinafter collectively referred to as

11   "Defendants"), and each of them, were at all times herein mentioned, the agents, servants,

12   employees, joint venturers, and/or co-conspirators of each of the other Defendants, and at all times

13   herein mentioned, were acting within the course and scope of said agency, employment or service,

14   and in furtherance of a joint venture and/or conspiracy.

15        6.    Venue is proper in this Judicial District because the Parties entered into agreements

16   and/or conducted transactions which were executed and to be performed in the City of Palm Desert,

17   County of Riverside, State of California, and that is also where Plaintiff's principal place of business

18   is located.

19        7.    On or about June 7, 2006, the Trust, for valuable consideration made, executed and

20   delivered to Canyon a Promissory Note ("Note") with an original principal amount of $2,000,000.00

21   at an initial interest rate of 7.570% per annum, with an increase of 5.000% in the event of default.

22   The Note created a revolving line of credit. The Note calls for regular monthly payments of all

23   accrued unpaid interest due as of each payment date, and one payment of all outstanding principal

24   plus all accrued unpaid on the maturity date. The Note further provides for a maturity date of June

25   7, 2007. A true and correct copy of the Note is attached hereto as Exhibit "A" and incorporated

26   herein by reference.

27        8.    On or about June 7, 2006, concurrently with the execution and delivery of the Note,

28   the Trust executed and delivered to Canyon a Business Loan Agreement ("2006 Loan Agreement")

**INC 1100035**

1   which sets forth additional terms and conditions of the loan referenced above and in the Note. A true

2   and correct copy of the 2006 Loan Agreement is attached hereto as Exhibit "B" and incorporated

3   herein by reference.

4         9.     On or about June 7, 2006, concurrently with the execution and delivery of the Note,

5   the Trust executed and delivered to Canyon a Trust Certificate ("2006 Trust Certificate") which

6   indicates that Michael J. Corliss and Martin D. Waiss are Co-Trustees of the Evergreen Capital

7   Trust, created pursuant to a trust agreement on December 31, 1992. A true and correct copy of the

8   2006 Trust Certificate is attached hereto as Exhibit "C" and incorporated herein by reference.

9        10.    On or about June 14, 2007, a Change in Terms Agreement ("2007 Change in Terms

10  Agreement") was executed at the insistence of the Trust. Canyon agreed to reduce the principal

11  indebtedness to $1,855,000.00 and extended the maturity date to June 7, 2008. A true and correct

12  copy of the 2007 Change in Terms Agreement is attached hereto as Exhibit "D" and incorporated

13  herein by reference.

14       11.   On or about June 12, 2007, the Trust executed and delivered to Canyon a Trust

15  Certificate ("2007 Trust Certificate") which indicates that Michael J. Corliss and Martin D. Waiss

16  are co-Trustees of the Evergreen Capital Trust, created pursuant to a Restatement of Declaration of

17  Trust dated January 1, 2000. A true and correct copy of the 2007 Trust Certificate is attached hereto

18  as Exhibit "E" and incorporated herein by reference.

19       12.   On or about May 23, 2008, a Change in Terms Agreement ("2008 Change in Terms

20  Agreement") was executed at the insistence of the Trust. Canyon agreed to set the principal

21  indebtedness at $1,855,000.00 and extended the maturity date to June 7, 2009. A true and correct

22  copy of the 2008 Change in Terms Agreement is attached hereto as Exhibit "F" and incorporated

23  herein by reference.

24       13.   On or about September 28, 2009, a Change in Terms Agreement ("2009 Change in

25  Terms Agreement") was executed at the insistence of the Trust. Canyon agreed to set the principal

26  indebtedness at $1,885,000.00 and extended the maturity date to June 7, 2010. The initial rate of

27  interest was set at 7.000%. A true and correct copy of the 2009 Change in Terms Agreement is

28  attached hereto as Exhibit "G" and incorporated herein by reference.

14.   On or about September 28, 2009, concurrently with the execution and delivery of the 2009 Change in Terms, the Trust executed and delivered to Canyon a Business Loan Agreement ("2009 Loan Agreement") which sets forth additional terms and conditions of the loan referenced above and in the Note. The 2009 Loan Agreement further calls for Evergreen to act as guarantor of all amounts loaned to the Trust. A true and correct copy of the 2009 Loan Agreement is attached hereto as Exhibit "H" and incorporated herein by reference.

15.   On or about September 28, 2009, concurrently with the execution and delivery of the 2009 Change in Terms, Evergreen executed and delivered to Canyon a Commercial Guaranty ("Guaranty") in which, for good and valuable consideration, Evergreen absolutely and unconditionally guaranteed full and punctual payment of all amounts by which the Trust is indebted to Canyon. A true and correct copy of the Guaranty is attached hereto as Exhibit "I" and incorporated herein by reference.

16.   Notwithstanding the successive extensions in maturity date and concessions made by Canyon, the Trust failed to make payments as required under the terms of the loan, thereby committing default.

17.   Defendants used the loan proceeds in the conduct of a business, and not for personal, family or household purposes.

18.   Notification has been given to, and demand has been made on, Defendants for payment of amounts required to cure the default. Defendants were also informed that failure to cure the default could result in imposition of costs and fees as provided by law and by the applicable agreements.

19.   Despite Canyon's demands, the borrower Trust has not cured any part of the default or made any further payment of the amounts due and outstanding under the loan. Further, guarantor Evergreen has not cured any part of the default or made any further payment of the amounts due and outstanding under the loan.

///

///

///

Complaint                                        -4-

## FIRST CAUSE OF ACTION

### (For Breach of Contract [Promissory Note, Guaranty]

### Against All Defendants)

20.     Canyon hereby incorporates by reference the allegations contained in paragraphs 1 through 19 above as though fully set forth herein verbatim.

21.     Canyon is, and at all times relevant hereto was, the holder of the Note and subsequent Change in Term Agreements under which the Trust agreed to repay all amounts loaned.

22.     Defendants, and each of them are, and at all times relevant hereto were, the obligors and/or guarantors of all amounts due under the Note.

23.     Defendants are in default and have breached the Note by failing to pay as required all then outstanding interest and principal due and owing as of the Note's maturity date, and by failing to pay late charges and other fees due and payable under the terms of the Note.

24.     As of December 31, 2010, there is due and owing from Defendants to Canyon the sum of $994,523.72 plus late charges.

25.     Despite Canyon's demands, Defendants, and each of them, have not cured any part of the default or made any further payment of the amounts due and outstanding under the loan.

26.     Canyon has performed all of the terms, conditions, covenants and promises required to be performed by Canyon under the Note and other loan documents, except those which have been waived, excused or whose performance has been made impossible by Defendants.

27.     Pursuant to the Note and Guaranty, Plaintiff is also entitled to payment of all attorneys' fees, legal expenses, court costs, and other fees incurred by reason of enforcing the terms of the Note. Canyon has employed Joseph A. Gibbs & Associates to enforce the Note and Guaranty. Canyon will seek leave of court to amend this Complaint when the exact sum of said fees and costs is ascertained at the time of trial.

## SECOND CAUSE OF ACTION

### (For Money Lent Against All Defendants)

28.     Canyon hereby incorporates by reference the allegations contained in paragraphs 1 through 27 above as though fully set forth herein verbatim.

1    29.    Canyon is informed and believes, and thereon alleges, that within the last two years,

2  Defendants, and each of them, became indebted to Canyon in the amount of $1,855,000.00, or as

3  much as was at any time outstanding, together with prejudgement interest at the legally allowable

4  rate.

5    30.    Although demand for amounts owed on the maturity date of the loan has been made,

6  Defendants, and each of them, have failed to pay amounts now due and owing to Canyon, presently

7  in the sum of $994,523.72 plus late charges of 5.000% of all regularly scheduled payments.

8                            ### THIRD CAUSE OF ACTION

9                    **(For Account Stated Against All Defendants)**

10   31.    Canyon hereby incorporates by reference the allegations contained in paragraphs 1

11 through 30 above as though fully set forth herein verbatim.

12   32.    Since September 28, 2009, an account was stated in writing by and between Canyon

13 and Defendants wherein it was agreed that Defendants were indebted to Canyon under the Note and

14 subsequent extensions. Although demand for payment has been made, there is still due and owing

15 to Canyon from Defendants the principal sum of $994,523.72 plus interest at the legally allowable

16 rate according to proof at the time of trial or entry of Judgment.

17   **WHEREFORE**, Canyon prays for judgment against the Trust, Evergreen and DOES 1-25

18 as follows:

19   1.    For damages in the sum of $994,523.72;

20   2.    For interest thereon as accrues until Judgment;

21   3.    For late charges as provided by the Note;

22   4.    For Canyon's reasonable attorneys' fees;

23   4.    For Canyon's costs; and

24   5.    For such other and further relief as the court deems just and proper.

25

26 DATED: January **3**, 2011                    JOSEPH A. GIBBS & ASSOCIATES

27                                             By: _____
                                                   SEAN M. SWINFORD
28                                             Attorneys for Plaintiff Canyon National
                                               Bank, a Federally-Chartered Commercial Bank

Complaint                                      -6-

Canyon National Bank v. Michael J. Corliss, etc., et al.

## EXHIBIT A

760 779 1790          JOSEPH A GIBBS                                    05:23:00 p.m.     01-03-2011      11 /51

 **CANYON** national bank.
LOCALLY OWNED AND MANAGED

 

**INC 1100035**

# PROMISSORY NOTE

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Evergreen Capital Trust<br>1302 Puyallup Street<br>Sumner, WA 98390 | Lender: | Canyon National Bank<br>Loan Department<br>74-180 Country Club Drive<br>Palm Desert, CA 92260<br>(760) 779-1500 |
|---|---|---|---|

**Principal Amount: $2,000,000.00          Initial Rate: 7.570%          Date of Note: June 7, 2006**

**PROMISE TO PAY.** Evergreen Capital Trust ("Borrower") promises to pay to Canyon National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million & 00/100 Dollars ($2,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 7, 2007. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 7, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the the average of interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Federal Reserve statistical release entitled H.15 (519) (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.070% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 2.500 percentage points over the Index, resulting in an initial rate of 7.570% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 2.000 percentage points.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Canyon National Bank, P.O. Box 9000 Palm Desert, CA 92255.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or

760 779 1790        JOSEPH A GIBBS                                    05:24:06 p.m.        01-03-2011        12/51

INC 1100035

## PROMISSORY NOTE
### (Continued)

a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Riverside County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $20.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

 Co-

**COLLATERAL.** This loan is unsecured.                                                     *or Martin D. Weiss, Co-Trustee of Evergreen Capital Trust*

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person currently is authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of his or her authority: Michael J. Corfias, Trustee of Evergreen Capital Trust. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**ARBITRATION.** Lender and Borrower agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing the Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing the Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**OUT-OF-DEBT REQUIREMENT..** Borrower is required to remain out of debt under this line of credit for one 30-day period or two 15-day periods during the term of the loan.

**ADDITIONAL EVENT OF DEFAULT.** Borrower and Lender covenant and agree that in addition to all the events of default as specified in the "Default" paragraph in the Promissory Note or any other loan related document, the following provision will also constitute an event of default under the terms of the Promissory Note or any other loan related document.

~~Any change in management or ownership of the borrowing entity without the prior written consent of the Lender.~~ 

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and is    Borrower's heirs, personal representatives,

760 779 1790          JOSEPH A GIBBS                          05:25:15 p.m.    01-03-2011    13/51



# PROMISSORY NOTE
## (Continued)

INC 1100035

Page 3

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Canyon National Bank P.O. Box 9000 PALM DESERT , CA 92255.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

EVERGREEN CAPITAL TRUST

By: _____
Marina Dubin ,Co-Trustee of Evergreen Capital Trust

LASER PRO Lending, Ver. 5.81.00.004  Copr. Harland Financial Solutions, Inc 1997, 2005.  All Rights Reserved.  - CA  c:\aprs\CFI\LPL\D20FC  TR-6485  PR-192

INC 1100035

Canyon National Bank v. Michael J. Corliss, etc., et al.

# EXHIBIT B

760 779 1790          JOSEPH A GIBBS                                05:25:54 p.m.      01-03-2011    15/51
INC 1100035



**CANYON** national bank
LOCALLY OWNED AND MANAGED

# BUSINESS LOAN AGREEMENT



References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Evergreen Capital Trust | Lender: | Canyon National Bank |
|---|---|---|---|
| | 1302 Puyallup Street | | Loan Department |
| | Sumner, WA 98390 | | 74-150 Country Club Drive |
| | | | Palm Desert, CA 92260 |
| | | | (760) 778-1500 |

**THIS BUSINESS LOAN AGREEMENT** dated June 7, 2006, is made and executed between Evergreen Capital Trust ("Borrower") and Canyon National Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of June 7, 2006, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following person currently is authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of his or her authority: Michael J. Corliss, Co-Trustee of Evergreen Capital Trust; ~~Martin b. Inkles, Co-Trustee of Evergreen Capital Trust~~

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

  **Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

  **Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

  **Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

  **No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

  **Business Activities.** Borrower is a trust which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Washington. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign trust in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower maintains an office at 1302 Puyallup Street, Sumner, WA 98390. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

  **Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

  **Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

  **Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

  **Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

  **Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing



# BUSINESS LOAN AGREEMENT
## (Continued)

Page 2

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times. *provided that real estate shall be reflected on such financial statements and fair market value basis.*

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender.

**Tax Returns.** As soon as available, but in no event later than ninety (90) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

**Working Capital Requirements.** Maintain Working Capital in excess of $10,000,000.00.

**Tangible Net Worth Requirements.** Maintain a minimum Tangible Net Worth of not less than: $45,000,000.00. In addition, Borrower shall comply with the following net worth ratio requirements:

**Debt / Worth Ratio.** Maintain a ratio of Debt / Worth not in excess of 3.000 to 1.000. The ratio "Debt / Worth" means Borrower's Total Liabilities divided by Borrower's Tangible Net Worth. This leverage ratio should be maintained at all times and may be evaluated at any time. *including minority interest*

Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverage and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverage will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained...



**INC 1100035**

## BUSINESS LOAN AGREEMENT
### (Continued)

**Page 3**

and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, or (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by

760 779 1790          JOSEPH A GIBBS                          05:29:24 p.m.    01-03-2011      18/51
                                                        INC 1100035



**BUSINESS LOAN AGREEMENT**
**(Continued)**

<div align="right">Page 4</div>

such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**OUT-OF-DEBT REQUIREMENT..** Borrower is required to remain out of debt under this line of credit for one 30-day period or two 15-day periods during the term of the loan.

**ADDITIONAL EVENT OF DEFAULT.** Borrower and Lender covenant and agree that in addition to all the events of default as specified in the "Default" paragraph in the Promissory Note or any other loan related document, the following provision will also constitute an event of default under the terms of the Promissory Note or any other loan related document.

~~Any change in management or ownership of the borrowing entity without the prior written consent of the Lender.~~ 

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Lender and Borrower agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing such property with or without judicial process pu    nt Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies     ncerning the lawfulness or reasonableness of a    ct, or exercise of any right, concerning any

760 779 1790        JOSEPH A GIBBS                                    05:30:30 p.m.    01-03-2011    19/51

INC 1100035



## BUSINESS LOAN AGREEMENT
### (Continued)

Page 5

provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Riverside County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

760 779 1790          JOSEPH A GIBBS                                    05:31:43 p.m.     01-03-2011     20/51
                                                                        INC 1100035



# BUSINESS LOAN AGREEMENT
## (Continued)

Page 6

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Evergreen Capital Trust, and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Canyon National Bank, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Borrower in the principal amount of $2,000,000.00 dated June 7, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**Tangible Net Worth.** The words "Tangible Net Worth" mean Borrower's total assets excluding all intangible assets (i.e., goodwill, trademarks, patents, copyrights, organizational expenses, and similar intangible items, but including leaseholds and leasehold improvements) less total debt, *including minority interest*



760 779 1790        JOSEPH A GIBBS                                05:32:38 p.m.    01-03-2011      21 /51



# BUSINESS LOAN AGREEMENT
## (Continued)

INC 1100035

**Page 7**

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED JUNE 7, 2006.

BORROWER:

EVERGREEN CAPITAL TRUST

By: _____
Martin Aaaaaa, CG - Trustee of Evergreen Capital Trust

LENDER:

CANYON NATIONAL BANK

By: _____
Authorized Signer

LASER PRO Lending, Ver. 5.31.00.004  Copr. Harland Financial Solutions, Inc. 1996, 2006.  All Rights Reserved.  - CA  Y:\bank\PRA\CMN.FC  TR-5495  PR-142

760 779 1790          JOSEPH A GIBBS                        05:32:55 p.m.     01−03−2011          22 /51

**INC 1100035**

Canyon National Bank v. Michael J. Corliss, etc., et al.

## EXHIBIT C

INC 1100035

# TRUST CERTIFICATE

[redacted]

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Trust:** Evergreen Capital Trust
1302 Puyallup Street
Sumner, WA 98390

**Lender:** Canyon National Bank
Loan Department
74-150 Country Club Drive
Palm Desert, CA 92260
(760) 776-1500

I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE TRUST.** Evergreen Capital Trust ("Trust") was created pursuant to a trust agreement on December 31, 1992.

**TRUSTEES.** The following named person has been duly appointed as Trustee of Evergreen Capital Trust:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| Michael J. Corliss | co- Trustee of Evergreen Capital Trust | Y | X ________________ |
| Martin L. Waite | co- Trustee of Evergreen Capital Trust | Y | X ________________ |

**ACCEPTANCE AS TRUSTEE.** The person named above has accepted his or her appointment as Trustee and is duly acting as Trustee of Trust.

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind Trust. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of Trust:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between Trust and Lender, such sum or sums of money as in his or her judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of Trust's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of Trust's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to Trust or in which Trust now or hereafter may have an interest, including without limitation all of Trust's real property and all of Trust's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of Trust to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to Trust or in which Trust may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to Trust's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, including agreements requiring disputes with Lender to be submitted to binding arbitration for final resolution, as the Trustee may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Certificate. The following person currently is authorized to request advances and authorize payments under the line of credit until Lender receives from Trust, at Lender's address shown above, written notice of revocation of his or her authority: Michael J. Corliss, Trustee of Evergreen Capital Trust.

**NOTICES TO LENDER.** The Trustee will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in Trust's name; (B) change in Trust's assumed business name(s); (C) change in the Trustees of the Trust; (D) change in the authorized signer(s); (E) change in Trust's state of organization; (F) conversion of Trust to a new or different type of business entity; or (G) change in any other aspect of Trust that directly or indirectly relates to any agreements between Trust and Lender. No change in Trust's name or state of organization will take effect until after Lender has received notice.

**FURTHER TRUST CERTIFICATIONS.** The person named above is duly appointed and acting Trustee of Trust and is duly authorized to act on behalf of Trust in the manner described above; I am familiar with the purpose of the indebtedness; the indebtedness proceeds are to be used for a legitimate trust purpose and for the benefit of the Trust and its beneficiaries.

**CONTINUING VALIDITY.** This Certificate shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of Trust's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and attest that the signature set opposite the name listed above is his or her genuine signature.

I have read all the provisions of this Certificate, and I personally and on behalf of Trust certify that all statements and representations made in this Certificate are true and correct. This Trust Certificate is dated ________________.

760 779 1790          JOSEPH A GIBBS                    05:34:09 p.m.    01–03–2011      24/51

INC 1100035

**TRUST CERTIFICATE**
**(Continued)**

Page 2

CERTIFIED TO AND ATTESTED BY:

x _____ , Trustee of Evergreen Capital Trust

760 779 1790          JOSEPH A GIBBS                                    05:34:23 p.m.    01–03–2011        25 /51

INC  1100035

| Canyon National Bank v. Michael J. Corliss, etc., et al. |
|---|
| **EXHIBIT D** |

760 779 1790          JOSEPH A GIBBS          05:34:35 p.m.    01-03-2011    26/51

# CHANGE IN TERMS AGREEMENT

INC 1100035

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Evergreen Capital Trust under the provisions of a Restatement of Declaration of Trust dated January 1, 2000 1302 PUYALLUP STREET SUITE A SUMNER, WA 98390 | Lender: | Canyon National Bank Loan Department 74-150 Country Club Drive Palm Desert, CA 92260 (760) 776-1500 |
|-----------|-----|---------|-----|

**Principal Amount: $1,855,000.00          Initial Rate: 7.875%          Date of Agreement:  June 14, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A line of credit evidenced by a promissory note dated June 07, 2006 , in the original principal amount of $2,000,000.00 and referencing Loan No. 358748. The outstanding principal balance due under the Note, as of the date of this Agreement, is $855,000.00.

**DESCRIPTION OF CHANGE IN TERMS.** The Note is hereby modified as follows: The date on which all outstanding principal is due and payable (together with any accrued but unpaid interest thereon) ("Maturity Date") is hereby extended from June 07, 2007, to June 07, 2008. The amount available to Borrower under the line of credit evidenced by the Note is hereby decreased from $2,000,000.00 to $1,855,000.00. Accordingly the principal amount of the Note is hereby decreased to $1,855,000.00. Borrower promises to pay to Lender, or order, the principal amount of $1,855,000.00, or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance made under the Note.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**OUT-OF-DEBT REQUIREMENT.** Borrower is required to remain out of debt under this line of credit for (1) 30-day period or (2) 15-day periods during the term of the loan.

**EFFECTIVE DATE OF CHANGE IN TERMS.** Notwithstanding the date of this Agreement or the date(s) on which this Agreement is signed by the parties hereto, the changes and modifications described in this Agreement shall be effective as of June 07, 2007.

**DOCUMENTS IN COUNTERPART.** This document may be executed in any number of counterparts, each of which shall be considered as an original and be effective as such.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

EVERGREEN CAPITAL TRUST UNDER THE PROVISIONS OF A RESTATEMENT OF DECLARATION OF TRUST DATED JANUARY 1, 2000

By: _____
Martin D. Weiss, Co-Trustee of Evergreen Capital
Trust under the provisions of a Restatement of
Declaration of Trust dated January 1, 2000

LASER PRO Lending, Ver. 5.36.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - CA  Y:\CANYON\LOAN\\CFI\LPL\\D20.FC  TR-7491  PR-149

760 779 1790          JOSEPH A GIBBS                                    05:35:23 p.m.    01−03−2011      27 /51
INC 1100035

Canyon National Bank v. Michael J. Corliss, etc., et al.

# EXHIBIT E

760 779 1790          JOSEPH A GIBBS                              05:35:35 p.m.    01-03-2011       28/51

 **TRUST CERTIFICATE**                 **INC 1100035**

---

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

---

Trust:     Evergreen Capital Trust            Lender:    Canyon National Bank
           1302 PUYALLUP STREET SUITE A                  Loan Department
           SUMNER, WA 98390                              74-150 Country Club Drive
                                                         Palm Desert, CA 92260
                                                         (760) 779-1500



---

WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:    *Restatement of Declaration of Trust dtd*

— THE TRUST. Evergreen Capital Trust ("Trust") was created pursuant to a trust agreement on December 31, 1992. *January 1, 2000*

TRUSTEES. The following named persons have been duly appointed as Trustees of Evergreen Capital Trust:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|-------|--------|------------|-------------------|
| Michael J. Corliss | Co-Trustee of Evergreen Capital Trust | Y | X |
| Martin D. Weiss | Co-Trustee of Evergreen Capital Trust | Y | X |

ACCEPTANCE AS TRUSTEES. The persons named above have accepted their appointment as Trustees and are duly acting as Trustees of Trust.

ACTIONS AUTHORIZED. Any two (2) of the authorized persons listed above may enter into any agreements of any nature with Lender, and those agreements will bind Trust. Specifically, but without limitation, any two (2) of such authorized persons are authorized, empowered, and directed to do the following for and on behalf of Trust:

Borrow Money. To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between Trust and Lender, such sum or sums of money as in their judgment should be borrowed, without limitation.

Execute Notes. To execute and deliver to Lender the promissory note or notes, or other evidence of Trust's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of Trust's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

Execute Security Documents. To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances. Notwithstanding the foregoing, any one of the above authorized persons may execute, deliver, or record financing statements.

Negotiate Items. To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to Trust or in which Trust may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to Trust's account with Lender, or to cause such other disposition of the proceeds derived therefrom as they may deem advisable.

Further Acts. In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, including agreements requiring arbitration or disputes with Lender to be submitted to binding arbitration for final resolution, as the Trustees may in their discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Certificate. The following persons currently are authorized to request advances and authorize payments under the line of credit until Lender receives from Trust, at Lender's address shown above, written notice of revocation of their authority: Michael J. Corliss, Co-Trustee of Evergreen Capital Trust; and Martin D. Weiss, Co-Trustee of Evergreen Capital Trust.

NOTICES TO LENDER. The Trustees will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in Trust's name; (B) change in Trust's assumed business name(s); (C) change in the Trustees of the Trust; (D) change in the authorized signer(s); (E) change in Trust's state of organization; (F) conversion of Trust to a new or different type of business entity; or (G) change in any other aspect of Trust that directly or indirectly relates to any agreements between Trust and Lender. No change in Trust's name or state of organization will take effect until after Lender has received notice.

FURTHER TRUST CERTIFICATIONS. The persons named above are duly appointed and acting Trustees of Trust and are duly authorized to act on behalf of Trust in the manner described above; we are familiar with the purpose of the indebtedness; the indebtedness proceeds are to be used for a legitimate trust purpose and for the benefit of the Trust and its beneficiaries.

CONTINUING VALIDITY. This Certificate shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of Trust's agreements or commitments in effect at the time notice is given.

IN TESTIMONY WHEREOF, we have hereunto set our hand and attest that the signatures set opposite the names listed above are their genuine signatures.

We each have read all the provisions of this Certificate, and we each personally and on behalf of Trust certify that all statements and representations made in this Certificate are true and correct. This Trust Certificate is dated *June 12, 2007*.

760 779 1790        JOSEPH A GIBBS                                    05:36:39 p.m.    01–03–2011        29 /51
                                                                                    INC 1100035

# TRUST CERTIFICATE
## (Continued)

Page 2

CERTIFIED TO AND ATTESTED BY:

X _Michael J. Corliss, Co-Trustee of Evergreen Capital_
Trust

X _Martin D. Wales, Co-Trustee of Evergreen Capital_
Trust

LASER PRO Lending, Ver. 5.59.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - WA/CA  H:\banc\CFI\LPL\G53.FC  TR-7451  PR-148

760 779 1790          JOSEPH A GIBBS                                    05:36:54 p.m.    01-03-2011        30 /51

INC  1100035

Canyon National Bank v. Michael J. Corliss, etc., et al.

# EXHIBIT F

INC 1100035

# [illegible]ANGE IN TERMS AGREEM[illegible]

[illegible]

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Evergreen Capital Trust under the provisions of a Restatement of Declaration of Trust dated January 1, 2000
1302 PUYALLUP STREET SUITE A
SUMNER, WA 98390

**Lender:** Canyon National Bank
Loan Department
74-150 Country Club Drive
Palm Desert, CA 92260
(760) 779-1500

**Principal Amount: $1,855,000.00** **Initial Rate: 5.000%** **Date of Agreement: May 23, 2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A line of credit evidenced by a Promissory Note dated June 07, 2006, in the original principal amount of $2,000,000.00 and referencing Loan No. 358748. The outstanding principal balance due under the Note, as of the date of this Agreement, is $1,718,000.00.

**DESCRIPTION OF CHANGE IN TERMS.** The Note is hereby modified as follows: The date on which all outstanding principal is due and payable (together with any accrued but unpaid interest thereon) ("Maturity Date") is hereby extended from June 07, 2008, to June 07, 2009.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**OUT-OF-DEBT REQUIREMENT.** Borrower is required to remain out of debt under this line of credit for (1) 30-day period or (2) 15-day periods during the term of the loan.

**DOCUMENTS IN COUNTERPART.** This document may be executed in any number of counterparts, each of which shall be considered as an original and be effective as such.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**EVERGREEN CAPITAL TRUST UNDER THE PROVISIONS OF A RESTATEMENT OF DECLARATION OF TRUST DATED JANUARY 1, 2000**

By: ______________________________
Martin D. Walde, Co-Trustee of Evergreen Capital Trust under the provisions of a Restatement of Declaration of Trust dated January 1, 2000

LASER PRO Lending, Ver. [illegible] Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA [illegible]

760 779 1790        JOSEPH A GIBBS                                    05:37:49 p.m.    01−03−2011        32 /51

INC  1100035

Canyon National Bank v. Michael J. Corliss, etc., et al.

# EXHIBIT G

760 779 1790          JOSEPH A GIBBS                              05:38:02 p.m.     01–03–2011        33 /51

**INC 1100035**

#  ANGE IN TERMS AGREEME

Borrower:   Evergreen Capital Trust          Lender:   Canyon National Bank
            1302 Puyallup Street, Suite A             Loan Department
            Sumner, WA 98390                          74-150 Country Club Drive
                                                      Palm Desert, CA 92260
                                                      (760) 776-1500

| Principal Amount: $1,855,000.00 | Initial Rate: 7.000% | Date of Agreement: September 28, 2009 |

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A line of credit evidenced by a Promissory Note dated June 7, 2006, in the original principal amount of $2,000,000.00 and referencing Loan No. 358748. The outstanding principal balance due under the Note, as of the date of this Agreement, is $1,855,000.00. The current Maturity Date under the Note, is June 7, 2009. The outstanding principal balance due under this Note, as of the date of the current Maturity Date, is $1,855,000.00.

**DESCRIPTION OF CHANGE IN TERMS.** The Note is hereby modified as follows: The date on which all outstanding principal is due and payable (together with any accrued but unpaid interest thereon) ("Maturity Date") is hereby extended from June 7, 2009, to June 7, 2010. Effective September 30, 2009 the amount available to Borrower under the line of credit evidenced by the Note is hereby decreased from $1,855,000.00 to $1,600,000.00. Accordingly the principal amount of the Note is hereby decreased to $1,600,000.00. Borrower promises to pay to Lender, or order, the principal amount of $1,600,000.00, or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance made under the Note. Effective December 31, 2009, the amount available to Borrower under the line of credit evidenced by the Note is hereby decreased from $1,600,000.00 to $1,000,000.00. Accordingly the principal amount of the Note is hereby decreased to $1,000,000.00. Borrower promises to pay to Lender, or order, the principal amount of $1,000,000.00, or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance made under the Note. Effective October 7, 2009 the Margin is increased and a Floor Rate is added to the Note, both are more thoroughly described below.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 7, 2010. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning November 7, 2009, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate, as published in the "Money Rates" section of the Western Edition of the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates, as well. The Index currently is 3.250% per annum. The interest rate to be applied to the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 3.750 percentage points over the Index, rounded to the nearest 0.125 percent, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 7.000%. NOTICE: Under no circumstances will the interest rate on this loan be less than 7.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign the Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL EVENT OF DEFAULT.** Borrower and Lender covenant and agree that in addition to all the events of default as specified in the "Default" paragraph in the Promissory Note or any other loan related document, the following provision will also constitute an event of default under the terms of the Promissory Note or any other loan related document.

Any change in management or ownership of the borrowing entity without the prior written consent of the Lender.

**OUT-OF-DEBT REQUIREMENT.** Borrower is required to remain out of debt under this line of credit for (1) 30-day period or (2) 15-day periods during the term of the loan.

**EFFECTIVE DATE OF CHANGE IN TERMS.,** Notwithstanding the date of this Agreement or the date(s) on which this Agreement is signed by the parties hereto, the changes and modifications described in this Agreement shall be effective as of June 7, 2009.

● HANGE IN TERMS AGREEMENT ●
(Continued)

**INC 1100035**

Page 2

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

EVERGREEN CAPITAL TRUST

By: _____
Michael J. Corliss, Co-Trustee of Evergreen Capital Trust

LASER PRO Lending, Ver. 5.49.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2002.  All Rights Reserved.  - CA H:\CFI\LPL\D20C3.FC  TR-824  PR-182

760 779 1790          JOSEPH A GIBBS                                    05:39:23 p.m.      01-03-2011      35/51

INC  1100035

STATE OF WASHINGTON          )
                            )ss.
COUNTY OF PIERCE             )

    I certify that I know or have satisfactory evidence that **Michael J. Corliss, as Co-Trustee of Evergreen Capital Trust,** signed the Change in Terms Agreement and acknowledged it to be his free and voluntary act for the uses and purposes mentioned in the instrument.

    WITNESS MY HAND and official seal this **27** day of September 2009.

NOTARY PUBLIC in and for the State
of Washington residing at _Maple Valley_
My commission expires on _9-19-13_

ANGELA L. HUMPHREYS
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
SEPTEMBER 19, 2013

760 779 1790          JOSEPH A GIBBS                    05:39:42 p.m.     01–03–2011        36 /51

INC 1100035

| Canyon National Bank v. Michael J. Corliss, etc., et al. |
|---|
| **EXHIBIT H** |

760 779 1790          JOSEPH A GIBBS                                05:39:54 p.m.     01-03-2011        37/51
                                                                    INC 1100035

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $1,855,000.00 | 06-07-2006 | 06-07-2010 | 358749 | 30 / 0001 Unsec | 110564-9 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Evergreen Capital Trust
1302 Puyallup Street, Suite A
Sumner, WA 98390

**Lender:** Canyon National Bank
Loan Department
74-199 Country Club Drive
Palm Desert, CA 92260
(760) 778-1899

THIS BUSINESS LOAN AGREEMENT dated September 28, 2006, is made and executed between Evergreen Capital Trust ("Borrower") and Canyon National Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of September 28, 2006, and shall continue in full force and effect until all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Michael J. Corliss, Co-Trustee of Evergreen Capital Trust under the provisions of a Restatement of Declaration of Trust dated January 1, 2006 or Martin D. Weiss Co-Trustee of Evergreen Capital Trust under the provisions of a Restatement of Declaration of Trust dated January 1, 2006

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents

- **Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) guaranties; (3) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel

  **Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document

  **Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct

  **No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists;

**Business Activities.** Borrower is a trust which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Washington Borrower is duly authorized to transact business in all other states in which Borrower is doing business. having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign trust in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition Borrower maintains an office at 1302 Puyallup Street Suite A, Sumner, WA 98390 Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed names used by Borrower Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender Borrower has no material contingent obligations except as disclosed in such financial statements

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms

760 779 1790          JOSEPH A GIBBS                          05:40:51 p.m.     01–03–2011     38 /51

INC 1100035

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Deposit Accounts.** Maintain with Lender compensating balances of available collected funds in DDA Balance Only in an amount not less than 99.999% of the outstanding Loan commitment on all loans from Lender to Borrower

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor

**Financial Records.** Maintain its books and records in accordance with Lender's requirements, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than one hundred twenty (120) days after the end of each fiscal year. Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender

**Interim Statements.** As soon as available, but in no event later than sixty (60) days after the end of each fiscal quarter. Borrower's balance sheet and profit and loss statement for the period ended, prepared by Borrower

**Tax Returns.** As soon as available, but in no event later than ninety (90) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared on a form and method acceptable to Lender, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

**Working Capital Requirements.** Maintain Working Capital in excess of $10,000,000.00.

**Tangible Net Worth Requirements.** Maintain a minimum Tangible Net Worth of not less than: $46,000,000.00. In addition, Borrower shall comply with the following net worth ratio requirements:

**Debt / Worth Ratio.** Maintain a ratio of Debt / Worth not in excess of 4.000 to 1.000. The ratio "Debt / Worth" means Borrower's Total Liabilities divided by Borrower's Tangible Net Worth. This leverage ratio should be maintained at all times and may be evaluated at any time.

760 779 1790          JOSEPH A GIBBS                                    05:41:53 p.m.     01-03-2011     39/51

INC 1100035



Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| Evergreen Capital Partners, L.L.C. | $1,365,000.00 |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower

fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity

NEGATIVE COVENANTS.  Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

Continuity of Operations.  (1)  Engage in any business activities substantially different than those in which Borrower is presently engaged, or (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business

CESSATION OF ADVANCES.  If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred

RIGHT OF SETOFF.  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account)  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph

DEFAULT.  Each of the following shall constitute an Event of Default under this Agreement:

Payment Default.  Borrower fails to make any payment when due under the Loan

Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower

Default in Favor of Third Parties.  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under the Agreement or any of the Related Documents

False Statements.  Any warranty, representation or statement made, or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

Insolvency.  The dissolution or termination of the Trust, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower

Defective Collateralization.  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness

Insecurity.  Lender in good faith believes itself insecure

Right to Cure.  If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months. It may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical

EFFECT OF AN EVENT OF DEFAULT.  If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional  In addition, Lender shall have all the rights and remedies provided in the

 

**INC 1100035**

Related Documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**ADDITIONAL EVENT OF DEFAULT.** Borrower and Lender covenant and agree that in addition to all the events of default as specified in the "Default" paragraph in the Promissory Note or any other loan related document, the following provision will also constitute an event of default under the terms of the Promissory Note or any other loan related document

Any change in management or ownership of the borrowing entity without the prior written consent of the Lender

**OUT-OF-DEBT REQUIREMENT.** Borrower is required to remain out of debt under this line of credit for (1) 30-day period or (2) 15-day periods during the term of the loan.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment

**Arbitration.**  Lender and Borrower agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party.  No act to take or dispose of any Collateral shall constitute a waiver of the arbitration agreement or be prohibited by this arbitration agreement.  This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code.  Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party.  Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration.  Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction.  Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction.  The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes.  The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement  Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services  Borrower also shall pay all court costs and such additional fees as may be directed by the court

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement

**Consent to Loan Participation.**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender  Lender may sell, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender

**Governing Law.**  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of California.

**Choice of Venue.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Riverside County, State of California.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

760 779 1790        JOSEPH A GIBBS                                                05:45:06 p.m.      01-03-2011        42/51

INC 1100035

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Evergreen Capital Trust and includes all co-signers and co-makers signing the Note and all their successors and assigns

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U S C Section 9601, et seq ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L No 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq , the Resource Conservation and Recovery Act, 42 U.S.C Section 6901. et seq., Chapters 6 5 through 7.7 of Division 20 of the California Health and Safety Code. Section 25100. et seq , or other applicable state or federal laws, rules, or regulations adopted pursuant thereto

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents

760 779 1790          JOSEPH A GIBBS                                        05:46:07 p.m.    01-03-2011    43 /51



**INC 1100035**

**Lender.** The word "Lender" means Canyon National Bank, its successors and assigns

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time

**Note.** The word "Note" means The Note executed by Evergreen Capital Trust, in the original principal amount of $2,000,000 00 dated June 7, 2006, together with all renewals of, extensions of, modifications of, refinancings of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise

**Tangible Net Worth.** The words "Tangible Net Worth" mean Borrower's total assets excluding all intangible assets (i e , goodwill, trademarks, patents, copyrights, organizational expenses, and similar intangible items, but including leaseholds and leasehold improvements) less total debt

INC 1100035

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED SEPTEMBER 25, 2008.

**BORROWER:**

EVERGREEN CAPITAL TRUST

By: _____
Michael J. Corliss, Co-Trustee of Evergreen Capital
Trust

**LENDER:**

CANYON NATIONAL BANK

By: _____
Authorized Signer

LASER PRO Lending, Ver. 5.40.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA F:\CANYON\CFI\LPL\PL\E20.FC TR-3404 PR-40 (M)

760 779 1790          JOSEPH A GIBBS                                    05:46:49 p.m.    01-03-2011        45 /51

INC 1100035

Canyon National Bank v. Michael J. Corliss, etc., et al.

# EXHIBIT I

INC 1100035

CANYON national bank

# COMMERCIAL GUARANTY

[redacted]

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Evergreen Capital Trust
1302 Puyallup Street, Suite A
Sumner, WA 98390

**Lender:** Canyon National Bank
Loan Department
74-150 Country Club Drive
Palm Desert, CA 92260
(760) 779-1500

**Guarantor:** Evergreen Capital Partners, L.L.C.
1302 Puyallup
Sumner, WA 98390

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. This Guaranty covers a revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of the Indebtedness. Guarantor specifically acknowledges and agrees that fluctuations in the amount of the Indebtedness, even to zero dollars ($ 0.00), shall not constitute a termination of this Guaranty. Guarantor's liability under this Guaranty shall terminate only upon (A) termination in writing by Borrower and Lender of the line of credit, (B) payment of the Indebtedness in full in legal tender, and (C) payment in full in legal tender of all of Guarantor's other obligations under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any

760 779 1790          JOSEPH A GIBBS                                    05:48:17 p.m.        01-03-2011      47/51
                                                                 INC 1100035

# COMMERCIAL GUARANTY
## (Continued)

Page 2

Information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B) proceed against any person, including Borrower, before proceeding against Guarantor; (C) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Guarantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (L) any statute of limitations in any action under this Guaranty or on the Indebtedness; or (M) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property. This means among other things: (N) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower. (O) If Lender forecloses on any real property collateral pledged by Borrower: (1) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (2) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**Guarantor's Understanding With Respect To Waivers.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**Right of Setoff.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**Subordination of Borrower's Debts to Guarantor.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Guaranty:

**AMENDMENTS.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ARBITRATION.** Lender and Borrower and Guarantor agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S/ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any

760 779 1790          JOSEPH A GIBBS                                    05:49:34 p.m.   01-03-2011   48/51

**INC 1100035**

## COMMERCIAL GUARANTY
### (Continued)

Page 3

---

disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Guarantor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer so much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**ATTORNEYS' FEES; EXPENSES.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**CAPTION HEADINGS.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.

**CHOICE OF VENUE.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Riverside County, State of California.

**INTEGRATION.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**INTERPRETATION.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**NOTICES.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**BORROWER.** The word "Borrower" means Evergreen Capital Trust and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GUARANTOR.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Evergreen Capital Partners, L.L.C., and in each case, any signer's successors and assigns.

**GUARANTY.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**INDEBTEDNESS.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**LENDER.** The word "Lender" means Canyon National Bank, its successors and assigns.

**NOTE.** The word "Note" means The Note executed by Evergreen Capital Trust, in the original principal amount of $2,000,000.00 dated June 7, 2006, together with all renewals of, extensions of, modifications of, refinancings of, and substitutions for the note or credit agreement.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments,

**COMMERCIAL GUARANTY**
(Continued)

Page 4

agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED SEPTEMBER 28, 2006.**

**GUARANTOR:**

**EVERGREEN CAPITAL PARTNERS, L.L.C.**

**INVESTCO FINANCIAL CORPORATION**, Manager of Evergreen Capital Partners, L.L.C.

By: _____

Michael J. Corliss, CEO of Investco Financial
Corporation

LASER PRO Lending, Ver. 5.40.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - CA  U:\proc\CFI\LPL\E20.FC  TR-5094  PR-132

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

— Sean M. Swinford, SBN 239283
Joseph A. Gibbs & Associates
74900 Highway 111, Suite 222
Indian Wells, California 92210
TELEPHONE NO.: 760-779-1790    FAX NO.: 760-779-1780
ATTORNEY FOR *(Name):* Plaintiff Canyon National Bank

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 46-200 Oasis Street
MAILING ADDRESS:
CITY AND ZIP CODE: Indio, 92201
BRANCH NAME: Larson Justice Center, Indio Branch

CASE NAME:
Canyon National Bank v. Michael J. Corliss, etc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | INC 1100035 |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:   DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[✓] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* Three (3)
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January **3** 2011

Sean M. Swinford
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

1  A. Barry Cappello (SBN 037835)
   abc@cappellonoel.com
2  Lawrence J. Conlan (SBN 221350)
   lconlan@cappellonoel.com
3  CAPPELLO & NOËL LLP
   831 State Street
4  Santa Barbara, California 93101
   Telephone:   (805) 564-2444
5  Facsimile:    (805) 965-5950

6  Attorneys for Defendants and Cross-complainants,
7  MICHAEL J. CORLISS, an individual, and
   MARTIN D. WAISS, an individual, in their
8  capacities as Co-Trustees of the
   EVERGREEN CAPITAL TRUST DATED JANUARY 1, 2000;
9  EVERGREEN
   CAPITAL PARTNERS
10 L.L.C.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 28 2011

G. HERNANDEZ

**VIA EMAIL**
Electronic Signature
Civil Code 1833.7

CM3

MAR 07 2011

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE – INDIO BRANCH**

| | |
|---|---|
| 11 CANYON NATIONAL BANK, a Federally-<br>Chartered Commercial Bank, | Case No.:  INC1100035 |
| 12                              Plaintiffs, | **CROSS-COMPLAINT FOR:** |
| 13 vs. | **(1) FRAUDULENT<br>MISREPRESENTATION** |
| 14 | **(2) NEGLIGENT<br>MISREPRESENTATION** |
| 15 MICHAEL J. CORLISS, an individual, and<br>MARTIN D. WAISS, an individual, in their<br>capacities as Co-Trustees of the EVERGREEN | **(3) BREACH OF ORAL CONTRACT**<br>**(4) BREACH OF IMPLIED IN FACT** |
| 16 CAPITAL TRUST DATED JANUARY 1, 2000;<br>EVERGREEN CAPITAL PARTNERS L.L.C., a | **CONTRACT**<br>**(5) BREACH OF THE COVENANT OF** |
| 17 Washington Limited Liability Company; and<br>DOES 1-25, inclusive, | **GOOD FAITH AND FAIR DEALING**<br>**(6) PROMISSORY ESTOPPEL** |
| 18 | |
| 19                              Defendants. | |
| 20 MICHAEL J. CORLISS, an individual, and<br>MARTIN D. WAISS, an individual, in their | |
| 21 capacities as Co-Trustees of the EVERGREEN<br>CAPITAL TRUST DATED JANUARY 1, 2000;<br>EVERGREEN CAPITAL PARTNERS L.L.C., | |
| 22                              Cross-Complainants, | |
| 23 vs. | |
| 24 CANYON NATIONAL BANK, a Federally-<br>Chartered Commercial Bank, and ROES 1 | Action filed on January 3, 2011<br>The Honorable Harold W. Hopp |
| 25 through 25, inclusive, | |
| 26                              Cross-Defendant. | **DEMAND FOR JURY TRIAL** |
| 27 | |
| 28 | |

CAPPELLO
& NOËL LLP
TRIAL LAWYERS

10015.001 - 181811.1

CROSS-COMPLAINT

Cross-complainants allege:

1.     All allegations made in this cross-complaint are based upon information and belief, except those allegations which pertain to the named cross-complainants, which are based on personal knowledge. The allegations of this cross-complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

2.     For several years, cross-complainant Evergreen Capital Trust ("Evergreen") and cross-defendant Canyon National Bank ("Canyon") had a mutually beneficial lending relationship. Starting in June 2006, Evergreen established a revolving line of credit with Canyon and for the next three years, the line of credit was renewed annually. In the course of dealing and conduct between the parties, and based on Canyon's verbal representations and promises, it was understood that the line of credit would be renewed automatically so long as no default occurred.

3.     In late 2010, without notice to Evergreen, Canyon unilaterally determined that it would no longer renew the line of credit. Evergreen continued to perform under the line, however, by making monthly payments which Canyon accepted and deposited into its own accounts. Canyon's acceptance of the payments continued the course of dealing between the parties and amounted to a waiver by Canyon of any right it had to terminate the line of credit.

4.     Meanwhile, Canyon attempted to extract a significant discount on a commercial lease Canyon had on real property owned and managed by a corporate affiliate of Evergreen. When Canyon ultimately was not able to extract the discount it wanted, however, it unilaterally terminated the line of credit and filed a lawsuit for breach of contract, money lent, and account stated.

5.     Canyon's actions in terminating the line of credit were inconsistent with and plainly contrary to the course of dealing between the parties, and the promises and representations Canyon had made to Evergreen. Canyon's actions have caused damage to Evergreen.

/ / /

/ / /

**PARTIES**

6.     Cross-complainant Evergreen Capital Trust is a Washington trust doing business in California.

7.     Cross-complainant Evergreen Capital Partners, LLC is a Washington limited liability company, doing business in California.

8.     Cross-defendant Canyon National Bank is, on information and belief, a Federally-Chartered Commercial Bank doing business in California.

9.     The true names and capacities, whether individual, corporate, associate or otherwise, of the cross-defendants named herein under the fictitious names of ROES 1 through 25, inclusive, are unknown to cross-complainants, who therefore sue said cross-defendants by such fictitious names.  Upon learning of these individuals and/or entities, cross-complainants will ask leave of Court to amend this cross-complaint and insert the true names and capacities.  Each of the cross-defendants designated herein as a "ROE" is legally responsible in some manner for the events and happenings herein alleged, and cross-complainants' damages as alleged herein were proximately caused by such cross-defendants.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over this cross-complaint pursuant to California Code of Civil Procedure section 410.10, 426.30, and 428.10.

11.     Venue is proper in this Court because the wrongful actions at the core of this dispute occurred in the County of Riverside.

**COMMON ALLEGATIONS**

12.     Evergreen has had a line of credit with Canyon for more than four years.  The parties agreed, orally and by their conduct, that the line of credit would be renewed each year so long as there was no default.

13.     Specifically, starting in June 2006, Evergreen established a revolving line of credit with Canyon worth $2 million.  The next year, the line of credit was renewed in an amount of $1,855,000.  For the next two years, the line of credit was renewed annually for the same amount, consistent with the parties' course of dealing and their oral agreement that, absent any default, the

2

10015.001 - 181811.1

1   line would continue to be renewed as part of a long-term lending relationship.

2         14.     Starting in or around September 2009, Evergreen, in further consideration of

3   the parties' agreement, began reducing the amount of the line of credit from $1,855,000 to

4   $1,000,000, and maintaining fifty percent of its loan commitment outstanding in deposit accounts at

5   Canyon. In addition, Evergreen Capital Partners provided a guaranty for the line of credit.

6   Evergreen performed at all times under the terms of the line of credit.

7         15.     In 2010, Canyon told Evergreen that it would not renew the line of credit.

8   Canyon's position was contrary to the parties' agreement and conduct that the line would be

9   renewed so long as Evergreen continued to make payments. Indeed, Evergreen thereafter continued

10   to make monthly payments, as the parties had agreed it would do, and Canyon accepted and

11   deposited the payments into its own accounts.

12         16.     Canyon's acceptance and deposit of Evergreen's payments amounted to a

13   waiver by Canyon of any right it had to terminate the line of credit for at least another year.

14         17.     Indeed, as recently as November 30, 2010, Canyon expressly advised

15   Evergreen that it was current on its obligations under the line of credit.

16         18.     Meanwhile, however, Canyon attempted to extract from Evergreen a major

17   discount on a commercial lease Canyon had on real property owned and managed by a corporate

18   affiliate of Evergreen. When Canyon was not able to extract a sizeable enough discount on the

19   commercial lease, Canyon terminated the line of credit.

20         19.     On or about January 3, 2011, Canyon filed a lawsuit for breach of contract,

21   money lent, and account stated seeking damages in the amount of $994,523.72, which allegedly

22   represented the balance on the line of credit.

23         20.     Canyon's actions in terminating the line of credit and filing a lawsuit were

24   inconsistent with and plainly contrary to the parties' agreements, the promises and representations

25   Canyon had made to Evergreen, and the course of dealing and conduct of the parties.

26         21.     Canyon's actions have caused damage to Evergreen.

27   / / /

28   / / /

## FIRST CAUSE OF ACTION

### (Fraudulent Misrepresentation – Cross-complainants against Canyon)

22.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 21, inclusive, as though fully incorporated herein and made a part hereof.

23.     Canyon represented to Evergreen that the line of credit and the lending relationship would continue to be renewed automatically so long as there was no default.

24.     Canyon's representation was a material or important fact concerning the line of credit and the parties' continued lending relationship.

25.     Canyon knew that its representation was false or recklessly disregarded the truth.

26.     Canyon intended the representation to reach Evergreen, and intended the representation to induce Evergreen to act upon it.

27.     Evergreen reasonably and justifiably relied on the misrepresentation by continuing to make payments under the line of credit and continuing the lending relationship with Canyon.

28.     As a result of Canyon's representations, Evergreen has suffered substantial harm, including as a result of paying down the line of credit, continuing the lending relationship when it otherwise would have sought to establish a lending relationship with a different lender, and the economic costs of Canyon's improper termination of the line of credit.

29.     Evergreen's reliance was a substantial factor in causing the harm..

## SECOND CAUSE OF ACTION

### (Negligent Misrepresentation – Cross-complainants against Canyon)

30.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 29, inclusive, as though fully incorporated herein and made a part hereof.

///

///

4

CROSS-COMPLAINT

10015.001 - 181811.1

31.     Canyon represented to Evergreen, through its words and actions, that the line of credit and the lending relationship would continue to be renewed automatically so long as there was no default.

32.     Canyon's representations to Evergreen were not true, and Canyon had no reasonable grounds for believing the representations to be true when they were made.

33.     Canyon intended Evergreen to rely on its representations and to continue paying down the line of credit and the lending relationship with Canyon.

34.     Evergreen reasonably relied on Canyon's representations and continued paying down the line of credit and the lending relationship with Canyon when it otherwise would not have done so.

35.     Canyon's representations caused Evergreen to suffer substantial losses, including as a result of paying down the line of credit, continuing the lending relationship when it otherwise would have sought to establish a lending relationship with a different lender, and the economic costs of Canyon's improper termination of the line of credit.

36.     Evergreen's reliance on Canyon's representations was a substantial factor in causing the harm to Evergreen.

## THIRD CAUSE OF ACTION

### (Breach of Oral Contract – Cross-complainants against Canyon)

37.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 36, inclusive, as though fully incorporated herein and made a part hereof.

38.     There was, by the words of the parties, an oral contract that the line of credit would continue to be renewed automatically absent any default by Evergreen.

39.     Evergreen has at all times performed the terms of the contract in the manner specified, or was excused in any alleged non-performance.

40.     Canyon failed and refused, and continues to refuse, to tender its performance as required by the contract. This includes that Canyon breached the contract by refusing to renew and thereafter terminating the line of credit.

41.     Canyon's failure and refusal to perform its obligations under the contract has directly damaged Evergreen because Evergreen now must defend against the lawsuit brought by Canyon, and expend additional resources trying to find another lender to extend a line of credit on equivalent or better terms.

42.     As a result of Canyon's breaches, Evergreen is entitled to, among other things, compensation for the expenses it has incurred and will incur in order to attain the benefits of performance equivalent to the terms of the line of credit prior to Canyon's breach.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Contract – Cross-complainants against Canyon)

43.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 42, inclusive, as though fully incorporated herein and made a part hereof.

44.     There was, by the conduct of the parties, an implied contract that the line of credit would continue to be renewed automatically absent any default by Evergreen.

45.     Evergreen has at all times performed the terms of the contract in the manner specified, or was excused in any alleged non-performance.

46.     Canyon failed and refused, and continues to refuse, to tender its performance as required by the contract.  This includes that Canyon breached the implied contract by refusing to renew and thereafter terminating the line of credit.

47.     Canyon's failure and refusal to perform its obligations under the contract has directly damaged Evergreen because Evergreen now must defend against the lawsuit brought by Canyon, and expend additional resources trying to find another lender to extend a line of credit on equivalent or better terms.

48.     As a result of Canyon's breaches, Evergreen is entitled to, among other things, compensation for the expenses it has incurred and will incur in order to attain the benefits of performance equivalent to the terms of the line of credit prior to Canyon's breach.

/ / /

/ / /

10015.001 - 181811.1

## FIFTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing – Cross-complainants against Canyon)

49. Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 48, inclusive, as though fully incorporated herein and made a part hereof.

50. There was implied in the line of credit a covenant of good faith and fair dealing whereby Canyon impliedly covenanted that it would in good faith and in the exercise of fair dealing deal with Evergreen fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Evergreen's rights, as well as an understanding that the line of credit would continue to renew automatically so long as there was no default.

51. As alleged herein, Canyon breached the covenant by its acts, including but not limited to, the acts set forth above, and, in addition:

a. Misrepresented to Evergreen that the line of credit would automatically renew each year in furtherance of a long term lending relationship;

b. Failed to give sufficient notice before terminating the line of credit and filing a lawsuit against Evergreen;

c. Failed to consider and/or negotiate in good faith concerning renewal of the line of credit; .

d. Evaded the spirit of the bargain Evergreen had made with Canyon; and

e. Unfairly conditioned renewal of the line of credit on a significant and unwarranted discount for an existing commercial lease in which Canyon was the tenant and a corporate affiliate of Evergreen the landlord.

52. Evergreen has performed all conditions, covenants and promises required by it on its part to be performed in accordance with the terms and conditions of the line of credit, except for those it was prevented from performing or which were waived or excused by Canyon's actions and misconduct.

///

7

CROSS-COMPLAINT

53.     As a proximate result of Canyon's wrongful conduct and breach of the covenant of good faith and fair dealing, Evergreen has been damaged in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION

**(Promissory Estoppel – Cross-complainants against Canyon)**

54.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 53, inclusive, as though fully incorporated herein and made a part hereof.

55.     Canyon promised during the lending relationship that it would work with Evergreen toward a long term relationship, and that the line of credit would continue to renew.

56.     Evergreen relied on those promises in continuing to pay down the principal on the line aggressively and continuing to work with Canyon.  Absent Canyon's promises, Evergreen would not have agreed to the extension and paid down the loan aggressively, and would have established another line of credit on equivalent or better terms with another lender.

57.     Evergreen's reliance was both reasonable and foreseeable.

58.     Canyon refused to renew the line of credit and wrongfully terminated it after promising not to do so and after accepting Evergreen's continued monthly principal and interest payments.

59.     As a proximate result of Evergreen's reliance on Canyon's promises, Evergreen has suffered substantial detriment and has been damaged in an amount to be proven at trial.

60.     Injustice can be avoided only by enforcement of Canyon's promises.

### PRAYER

WHEREFORE, cross-complainants pray for judgment as follows:

1.     Compensatory damages in an amount to be proven at trial, together with interest.

2.     Punitive damages in such sum as the court may determine, but in no event less than double the amount of actual damages.

3.     Costs of this action and reasonable attorneys' fees.

8

CROSS-COMPLAINT

10015.001 - 181811.1

1        4.    Any alternative and additional relief as the Court deems proper.

2

3    DATED: February 28, 2011            CAPPELLO & NOËL LLP

4

5                                By: _____

6                                A. Barry Cappello
                                 Lawrence J. Conlan

7                                Attorneys for
                      Defendants and Cross-complainants

8                     Evergreen Capital Trust, Michael J. Corliss,
                      Martin D. Waiss, and Evergreen Capital

9                     Partners, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10015.001 - 181811.1

## DEMAND FOR JURY TRIAL

Defendants/Cross-complainants demand a trial by jury of all issues so triable in this action.

DATED:  February 28, 2011

CAPPELLO & NOËL LLP

By:

A. Barry Cappello
Lawrence J. Conlan
Attorneys for
Defendants and Cross-complainants
Evergreen Capital Trust, Michael J. Corliss,
Martin D. Waiss, and Evergreen Capital
Partners, LLC

10

CROSS-COMPLAINT

10015.001 - 181811 1

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 years and not a party to this action. My business address is 831 State Street, Santa Barbara, California 93101. On February 28, 2011, I served the foregoing document described as **CROSS-COMPLAINT** on the interested parties in this action:

SEE ATTACHED SERVICE LIST

☒   **BY U.S. POSTAL SERVICE:** This document was served by United States mail. I enclosed the document in a sealed envelope or package addressed to the person(s) at the address(es) above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Santa Barbara, California, in a sealed envelope with postage fully paid.

☐   **BY FACSIMILE:** The document(s) were served by facsimile. The facsimile transmission was without error and completed prior to 5:00 p.m. A copy of the transmission report is available upon request.

☐   **BY OVERNIGHT DELIVERY:** The document(s) were served by overnight delivery via FedEx. I enclosed the document in a sealed envelope or package addressed to the person(s) and the address(es) above and placed the envelope(s) for pick-up by FedEx. I am readily familiar with the firm's practice of collection and processing correspondence on the same day with this courier service, for overnight delivery.

☐   **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐   **BY HAND DELIVERY:** The document(s) were delivered by hand during the normal course of business, during regular business hours.

☐   (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐   (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 28, 2011, at Santa Barbara, California.

_____
Tina Vanderhook

11
CROSS-COMPLAINT

**SERVICE LIST**

1

2

3
Joseph A. Gibbs                                    Attorneys for Plaintiff, Canyon National Bank
4
Sean M. Swinford
Joseph A. Gibbs & Associates
5
74900 Highway 111, Suite 222
Indian Wells, CA  92210
6
Fax:  (760) 779-1780

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12
CROSS-COMPLAINT

I0015.001 - 181811.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "D"



1  A. Barry Cappello (SBN 037835)
   abc@cappellonoel.com
2  Lawrence J. Conlan (SBN 221350)
   lconlan@cappellonoel.com
3  CAPPELLO & NOËL LLP
   831 State Street
4  Santa Barbara, California 93101
   Telephone:   (805) 564-2444
5  Facsimile:   (805) 965-5950

6  Attorneys for Defendants and Cross-complainants
7  *MICHAEL J. CORLISS, an individual,*
   *and MARTIN D. WAISS, an individual, in*
8  *their capacities as Co-Trustees of the*
   *EVERGREEN CAPITAL TRUST DATED JANUARY 1, 2000;*
9  *EVERGREEN CAPITAL*
   *PARTNERS L.L.C.*

   **F I L E D**
   SUPERIOR COURT OF CALIFORNIA
   COUNTY OF RIVERSIDE

   FEB 28 2011

   G. HERNANDEZ

   **VIA EMAIL**
   Electronic Signature
   Civil Code 1633.7

   CM3

   MAR 07 2011

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE – INDIO BRANCH

11 | CANYON NATIONAL BANK, a Federally-
12 | Chartered Commercial Bank,

13 |              Plaintiffs,

14 | vs.

15 | MICHAEL J. CORLISS, an individual, and
   | MARTIN D. WAISS, an individual, in their
16 | capacities as Co-Trustees of the EVERGREEN
   | CAPITAL TRUST DATED JANUARY 1, 2000;
17 | EVERGREEN CAPITAL PARTNERS L.L.C., a
   | Washington Limited Liability Company; and
18 | DOES 1-25, inclusive,

19 |              Defendants.

20 | AND RELATED CROSS ACTION

Case No.:  INC1100035

**ANSWER TO COMPLAINT**

Action filed on January 3, 2011

The Honorable Harold W. Hopp

CAPPELLO
& NOËL LLP
TRIAL LAWYERS

10015.001 - 182419.2

**ANSWER TO COMPLAINT**

1    Defendants, for themselves alone and not for any other person, corporation, or legal entity,

2    answer the unverified complaint ("the Complaint") of plaintiff on file herein as follows:

3                                    **GENERAL DENIAL**

4         In accordance with Code of Civil Procedure § 431.30(d), the Complaint being unverified,

5    defendants generally and specifically deny each and every allegation contained in the Complaint,

6    and the whole thereof, and specifically deny that plaintiff has been damaged in the sum or sums

7    alleged, or in any other sum or sums, or at all, and aver that plaintiff is not entitled to the relief

8    sought in the Complaint, or any other relief whatsoever.

9                              **FIRST AFFIRMATIVE DEFENSE**

10                          **(Failure To State A Cause Of Action)**

11        1.    As a separate defense neither the Complaint nor any cause of action in the Complaint

12   states facts sufficient to constitute a cause of action against these appearing defendants.

13                            **SECOND AFFIRMATIVE DEFENSE**

14                               **(Mitigation of Damages)**

15        2.    As a further separate defense plaintiff's alleged injuries and damages, if any, were

16   aggravated by plaintiff's failure to use reasonable diligence to mitigate them.

17                             **THIRD AFFIRMATIVE DEFENSE**

18                                     **(Waiver)**

19        3.    As a further separate defense plaintiff has waived the right to maintain the action filed

20   in this case.

21                            **FOURTH AFFIRMATIVE DEFENSE**

22                                    **(Consent)**

23        4.    As a further separate defense plaintiff consented to the acts complained of in the

24   Complaint, and said consent was express and/or implied.

25                             **FIFTH AFFIRMATIVE DEFENSE**

26                                    **(Estoppel)**

27        5.    As a further separate defense plaintiff is estopped by action of law or by conduct from

28   maintaining the actions filed in this case by reason of the acts, omissions, representations and/or

---

1

ANSWER TO COMPLAINT

10015.001 - 182419.2

courses of conduct of plaintiff, and/or its respective agents, upon which defendants relied, to their prejudice and detriment.

## SIXTH AFFIRMATIVE DEFENSE

### (Repudiation)

6.    As a further separate defense plaintiff substantially and materially breached the alleged obligation or contract, thereby repudiating it, prior to commencement of this action, extinguishing the right to maintain an action for breach of contract.

## SEVENTH AFFIRMATIVE DEFENSE

### (Discharge)

7.    As a further separate defense the obligations of defendants under the terms and conditions of the alleged contract have been discharged by operation of law.

## EIGHTH AFFIRMATIVE DEFENSE

### (Discharged By Consideration)

8.    As a further separate defense prior to commencement of this action, and for a valuable consideration, plaintiff agreed to waive and forever discharge the right to maintain the actions set forth in the Complaint.

## NINTH AFFIRMATIVE DEFENSE

### (Fraud in the Procurement)

9.    As a further separate defense the contracts or obligations alleged by plaintiff was procured by the fraud or misrepresentation of plaintiff and/or its predecessors, voiding the obligations of defendants thereunder.

## TENTH AFFIRMATIVE DEFENSE

### (Void Contract)

10.    As a further separate defense the contracts or obligations alleged by plaintiff is void as a matter of law and therefore unenforceable.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure of Consideration)

11.    As a further separate defense performance under the alleged contract was excused by

1    the failure of consideration to be provided by plaintiff.

2    <div align="center">**TWELFTH AFFIRMATIVE DEFENSE**</div>

3    <div align="center">**(Prevention of Performance)**</div>

4      12.    As a further separate defense plaintiff or plaintiff's assignor prevented defendants

5    from performing their obligations under the contract.

6    <div align="center">**THIRTEENTH AFFIRMATIVE DEFENSE**</div>

7    <div align="center">**(Unjust Enrichment)**</div>

8      13.    As a further separate defense granting plaintiff's demand in the Complaint would

9    result in the plaintiff receiving more money than it is entitled to receive.

10    <div align="center">**FOURTEENTH AFFIRMATIVE DEFENSE**</div>

11    <div align="center">**(Frustration of Purpose)**</div>

12      14.    As a further separate defense if the contract described in the Complaint were to be

13    enforced, it would go against the very purpose for which the parties entered into the contract in the

14    first place.

15    <div align="center">**FIFTEENTH AFFIRMATIVE DEFENSE**</div>

16    <div align="center">**(Failure of Condition Precedent)**</div>

17      15.    As a further separate defense defendants were excused from having to perform their

18    obligations under the contract because certain conditions that were required to occur first never

19    occurred.

20    <div align="center">**SIXTEENTH AFFIRMATIVE DEFENSE**</div>

21    <div align="center">**(Breach by Plaintiff)**</div>

22      16.    As a further separate defense plaintiff or plaintiff's assignor breached the contract

23    first; thus, defendants were excused from performing their obligations.

24    <div align="center">**SEVENTEENTH AFFIRMATIVE DEFENSE**</div>

25    <div align="center">**(Anticipatory Repudiation)**</div>

26      17.    As a further separate defense before defendants had any obligation to perform their

27    part of the contract, plaintiff and/or plaintiff's assignor indicated that it would not perform.

28

<div align="center">3</div>

<div align="center">ANSWER TO COMPLAINT</div>

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Improper Notice of Breach)

18.    As a further separate defense plaintiff and/or plaintiff's assignor failed to give proper notice to defendants of the claimed breach prior to filing this lawsuit.  Notice was required, and failure to give notice deprived defendants of the opportunity to timely correct the breach.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Offset)

19.    As a further separate defense defendants are entitled to a credit for money owed by plaintiff or plaintiff's assignor.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Setoff)

20.    As a further separate defense plaintiff's claims, if any, are reducible by the amount of damages incurred by defendants as a result of plaintiff's wrongful acts and/or the wrongdoing of others.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

21.    As a further separate defense defendants reached an agreement with plaintiff or plaintiff's assignor to pay a different amount than what the Complaint states, and defendants paid the agreed upon amount.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Laches)

22.    As a further separate defense the actions filed in this case are not maintainable under the doctrine of laches because of plaintiff's prejudicial delay in asserting them.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

23.    As a further separate defense plaintiff has "unclean hands" with regard to the relief sought in the Complaint and is therefore barred from obtaining such relief.

ANSWER TO COMPLAINT

10015.001 - 182419.2

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Rescission)

24.    As a further separate defense defendants are entitled to rescind the agreements alleged in the Complaint due to omissions and/or misrepresentations of fact made by either plaintiff and/or plaintiff's assignor and/or their representative agents, employees, and/or representatives, as well as its fraud and breaches, and the failure of consideration, impossibility, and/or impracticability.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Excused)

25.    As a further separate defense plaintiff and/or its agents, employees and/or representatives, have expressly and/or impliedly, and/or by operation of law, excused defendants from any and all obligations under the terms of any alleged agreement which forms the basis of this action.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Ratification)

26.    As a further separate defense, as to each purported cause of action set forth in the Complaint, plaintiff is barred from any recovery against defendants by reason of its own actions and conduct which constituted a ratification of the alleged actions and conduct of defendants.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Join Indispensible Parties)

27.    As a further separate defense plaintiff's claims are barred because plaintiff has failed to join an indispensable party.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Promissory Estoppel)

28.    As a further separate defense plaintiff's claims are barred under the doctrine of promissory estoppel.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (No Underlying Default)

29.    As a further separate defense plaintiff is not entitled to pursue recovery based on any

ANSWER TO COMPLAINT

1   agreement because the underlying debt is not in default.

2   ### THIRTIETH AFFIRMATIVE DEFENSE

3   #### (Fraud)

4       30.    As a further separate defense plaintiff's recovery is barred by its fraud.

5   ### THIRTY-FIRST AFFIRMATIVE DEFENSE

6   #### (Breach of Fiduciary Duty)

7       31.    As a further separate defense plaintiff's claims are barred by its breaches of fiduciary

8   duty.

9   ### THIRTY-SECOND AFFIRMATIVE DEFENSE

10  #### (Change in Course of Dealing)

11      32.    As a further separate defense plaintiff's claims are barred because plaintiff arbitrarily

12  altered the course of dealing between the parties.

13  ### THIRTY-THIRD AFFIRMATIVE DEFENSE

14  #### (Full Performance)

15      33.    As a further separate defense defendants have fully performed all obligations required

16  of them under each and every agreement alleged in the Complaint, except to the extent that those

17  obligations have been discharged and/or excused by plaintiffs' own failure to perform.

18  ### THIRTY-FOURTH AFFIRMATIVE DEFENSE

19  #### (Failure To Act In Good Faith)

20      34.    As a further separate defense any recovery on plaintiff's Complaint, or any purported

21  cause of action alleged therein, is barred in that plaintiff failed to act in good faith toward and deal

22  fairly with defendants.

23  ### THIRTY-FIFTH AFFIRMATIVE DEFENSE

24  #### (Failure to Perform)

25      35.    As a further separate defense plaintiffs' recovery, if any, is barred because plaintiff

26  has failed to perform all conditions, covenants, and/or promises required to be performed by it in

27  accordance with the terms and conditions of the alleged agreements.

28

10015.001 - 182419.2

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Impossibility)

36.     As a further separate defense plaintiff's claims are barred under the doctrine of impossibility and/or temporary impossibility.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Impracticability)

37.     As a further separate defense plaintiff's claims are barred under the doctrine of impracticability.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Statutes of Limitation)

38.     As a further separate defense the Complaint and each cause of action contained therein is barred by the applicable statutes of limitation, including but not limited to, Civil Code section 2911(1) and Code of Civil Procedure sections 337 and 339.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Anti-deficiency)

39.     As a further separate defense plaintiff's claims are barred as a result of the anti-deficiency statutes, including, but not limited to, Code of Civil Procedure sections 580a, 580b, 580d, 726 and related case law.

## FORTIETH AFFIRMATIVE DEFENSE

### (One Action and Security First)

40.     As a further separate defense plaintiff's claims are barred as a result of the one action and security first rule, including, but not limited to, Code of Civil Procedure section 726 and related case law.

## FORTY-FIRST AFFIRMATIVE DEFENSE

### (Modification)

41.     As a further separate defense plaintiff is not entitled to relief because the contract alleged in the Complaint has been modified by agreement of the parties

ANSWER TO COMPLAINT

10015.001 - 182419.2

## ADDITIONAL AFFIRMATIVE DEFENSES

42.    Defendants have not knowingly or intentionally waive any applicable affirmative defenses and reserve the right to assert and rely on such other applicable affirmative defense as may become available or apparent during discovery proceedings.  Defendants further reserve the right to amend their answer and/or affirmative defenses accordingly and/or to delete affirmative defenses that they determine during the course of subsequent discovery are not applicable.

## PRAYER

WHEREFORE, defendants pray for judgment against plaintiff as follows:

1.    That the complaint is dismissed against defendants with prejudice;

2.    That plaintiff take nothing by way of this complaint;

3.    That defendants recover their costs of suit herein;

4.    That defendants recover their reasonable attorneys' fees; and,

5.    For such other and further relief that the Court deems just and proper.

DATED: February 28, 2011

CAPPELLO & NOËL LLP

By: _____

A. Barry Cappello
Lawrence J. Conlan
Attorneys for
Defendants and Cross-complainants
Evergreen Capital Trust, Michael J. Corliss,
Martin D. Waiss, and Evergreen Capital
Partners, LLC

8

ANSWER TO COMPLAINT

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 years and not a party to this action. My business address is 831 State Street, Santa Barbara, California 93101. On February 28, 2011, I served the foregoing document described as **ANSWER TO COMPLAINT** on the interested parties in this action:

SEE ATTACHED SERVICE LIST

☒ **BY U.S. POSTAL SERVICE:** This document was served by United States mail. I enclosed the document in a sealed envelope or package addressed to the person(s) at the address(es) above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Santa Barbara, California, in a sealed envelope with postage fully paid.

☐ **BY FACSIMILE:** The document(s) were served by facsimile. The facsimile transmission was without error and completed prior to 5:00 p.m. A copy of the transmission report is available upon request.

☐ **BY OVERNIGHT DELIVERY:** The document(s) were served by overnight delivery via FedEx. I enclosed the document in a sealed envelope or package addressed to the person(s) and the address(es) above and placed the envelope(s) for pick-up by FedEx. I am readily familiar with the firm's practice of collection and processing correspondence on the same day with this courier service, for overnight delivery.

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY HAND DELIVERY:** The document(s) were delivered by hand during the normal course of business, during regular business hours.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 28, 2011, at Santa Barbara, California.

Tina Vanderhook

10015.001 - 182419.2



**SERVICE LIST**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph A. Gibbs                                      Attorneys for Plaintiff, Canyon National Bank
Sean M. Swinford
Joseph A. Gibbs & Associates
74900 Highway 111, Suite 222
Indian Wells, CA  92210
Fax:  (760) 779-1780

10015.001 - 182419.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "E"

1    A. Barry Cappello (SBN 037835)
     abc@cappellonoel.com
2    Lawrence J. Conlan (SBN 221350)
     lconlan@cappellonoel.com
3    CAPPELLO & NOËL LLP
     831 State Street
4    Santa Barbara, California 93101
     Telephone:   (805) 564-2444
5    Facsimile:   (805) 965-5950

6    Attorneys for Defendants and Cross-complainants,
     MICHAEL J. CORLISS, an individual, and
7    MARTIN D. WAISS, an individual, in their
     capacities as Co-Trustees of the
8    EVERGREEN CAPITAL TRUST DATED JANUARY 1, 2000;
9    EVERGREEN
     CAPITAL PARTNERS
10   L.L.C.

     F I L E D
     SUPERIOR COURT OF CALIFORNIA
     COUNTY OF RIVERSIDE

     FEB 28 2011

     G. HERNANDEZ

     VIA EMAIL
     Electronic Signature
     Civil Code 1633.7

     CM0
     MAR 07 2011

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE – INDIO BRANCH**

| | |
|---|---|
| 11  CANYON NATIONAL BANK, a Federally-<br>Chartered Commercial Bank,<br><br>12<br>13                Plaintiffs,<br><br>14  vs.<br><br>15  MICHAEL J. CORLISS, an individual, and<br>MARTIN D. WAISS, an individual, in their<br>capacities as Co-Trustees of the EVERGREEN<br>16  CAPITAL TRUST DATED JANUARY 1, 2000;<br>EVERGREEN CAPITAL PARTNERS L.L.C., a<br>17  Washington Limited Liability Company; and<br>DOES 1-25, inclusive,<br><br>18<br>19                Defendants.<br><br>20  MICHAEL J. CORLISS, an individual, and<br>MARTIN D. WAISS, an individual, in their<br>21  capacities as Co-Trustees of the EVERGREEN<br>CAPITAL TRUST DATED JANUARY 1, 2000;<br>22  EVERGREEN CAPITAL PARTNERS L.L.C.,<br><br>          Cross-Complainants,<br>23<br>vs.<br>24  CANYON NATIONAL BANK, a Federally-<br>Chartered Commercial Bank, and ROES 1<br>25  through 25, inclusive,<br><br>26                Cross-Defendant. | Case No.:  INC1100035<br><br>**CROSS-COMPLAINT FOR:**<br><br>**(1) FRAUDULENT<br>MISREPRESENTATION**<br>**(2) NEGLIGENT<br>MISREPRESENTATION**<br>**(3) BREACH OF ORAL CONTRACT**<br>**(4) BREACH OF IMPLIED IN FACT<br>CONTRACT**<br>**(5) BREACH OF THE COVENANT OF<br>GOOD FAITH AND FAIR DEALING**<br>**(6) PROMISSORY ESTOPPEL**<br><br><br><br><br>Action filed on January 3, 2011<br>The Honorable Harold W. Hopp<br><br>**DEMAND FOR JURY TRIAL** |

27

28

CAPPELLO
& NOËL LLP
TRIAL LAWYERS

10015.001 - 181811.1

CROSS-COMPLAINT

1   Cross-complainants allege:

2        1.      All allegations made in this cross-complaint are based upon information and

3   belief, except those allegations which pertain to the named cross-complainants, which are based on

4   personal knowledge.  The allegations of this cross-complaint stated on information and belief are

5   likely to have evidentiary support after a reasonable opportunity for further investigation or

6   discovery.

7                                    **INTRODUCTION**

8        2.      For several years, cross-complainant Evergreen Capital Trust ("Evergreen")

9   and cross-defendant Canyon National Bank ("Canyon") had a mutually beneficial lending

10  relationship.  Starting in June 2006, Evergreen established a revolving line of credit with Canyon

11  and for the next three years, the line of credit was renewed annually.  In the course of dealing and

12  conduct between the parties, and based on Canyon's verbal representations and promises, it was

13  understood that the line of credit would be renewed automatically so long as no default occurred.

14       3.      In late 2010, without notice to Evergreen, Canyon unilaterally determined that

15  it would no longer renew the line of credit.  Evergreen continued to perform under the line,

16  however, by making monthly payments which Canyon accepted and deposited into its own

17  accounts.  Canyon's acceptance of the payments continued the course of dealing between the parties

18  and amounted to a waiver by Canyon of any right it had to terminate the line of credit.

19       4.      Meanwhile, Canyon attempted to extract a significant discount on a

20  commercial lease Canyon had on real property owned and managed by a corporate affiliate of

21  Evergreen.  When Canyon ultimately was not able to extract the discount it wanted, however, it

22  unilaterally terminated the line of credit and filed a lawsuit for breach of contract, money lent, and

23  account stated.

24       5.      Canyon's actions in terminating the line of credit were inconsistent with and

25  plainly contrary to the course of dealing between the parties, and the promises and representations

26  Canyon had made to Evergreen.  Canyon's actions have caused damage to Evergreen.

27  ///

28  ///

10015.001 - 181811.1

1

## PARTIES

2    6.    Cross-complainant Evergreen Capital Trust is a Washington trust doing

3    business in California.

4    7.    Cross-complainant Evergreen Capital Partners, LLC is a Washington limited

5    liability company, doing business in California.

6    8.    Cross-defendant Canyon National Bank is, on information and belief, a

7    Federally-Chartered Commercial Bank doing business in California.

8    9.    The true names and capacities, whether individual, corporate, associate or

9    otherwise, of the cross-defendants named herein under the fictitious names of ROES 1 through 25,

10   inclusive, are unknown to cross-complainants, who therefore sue said cross-defendants by such

11   fictitious names. Upon learning of these individuals and/or entities, cross-complainants will ask

12   leave of Court to amend this cross-complaint and insert the true names and capacities. Each of the

13   cross-defendants designated herein as a "ROE" is legally responsible in some manner for the events

14   and happenings herein alleged, and cross-complainants' damages as alleged herein were

15   proximately caused by such cross-defendants.

16

## JURISDICTION AND VENUE

17   10.    This Court has jurisdiction over this cross-complaint pursuant to California

18   Code of Civil Procedure section 410.10, 426.30, and 428.10.

19   11.    Venue is proper in this Court because the wrongful actions at the core of this

20   dispute occurred in the County of Riverside.

21

## COMMON ALLEGATIONS

22   12.    Evergreen has had a line of credit with Canyon for more than four years. The

23   parties agreed, orally and by their conduct, that the line of credit would be renewed each year so

24   long as there was no default.

25   13.    Specifically, starting in June 2006, Evergreen established a revolving line of

26   credit with Canyon worth $2 million. The next year, the line of credit was renewed in an amount of

27   $1,855,000. For the next two years, the line of credit was renewed annually for the same amount,

28   consistent with the parties' course of dealing and their oral agreement that, absent any default, the

10015.001 - 181811.1

1  line would continue to be renewed as part of a long-term lending relationship.

2      14.    Starting in or around September 2009, Evergreen, in further consideration of

3  the parties' agreement, began reducing the amount of the line of credit from $1,855,000 to

4  $1,000,000, and maintaining fifty percent of its loan commitment outstanding in deposit accounts at

5  Canyon. In addition, Evergreen Capital Partners provided a guaranty for the line of credit.

6  Evergreen performed at all times under the terms of the line of credit.

7      15.    In 2010, Canyon told Evergreen that it would not renew the line of credit.

8  Canyon's position was contrary to the parties' agreement and conduct that the line would be

9  renewed so long as Evergreen continued to make payments. Indeed, Evergreen thereafter continued

10  to make monthly payments, as the parties had agreed it would do, and Canyon accepted and

11  deposited the payments into its own accounts.

12      16.    Canyon's acceptance and deposit of Evergreen's payments amounted to a

13  waiver by Canyon of any right it had to terminate the line of credit for at least another year.

14      17.    Indeed, as recently as November 30, 2010, Canyon expressly advised

15  Evergreen that it was current on its obligations under the line of credit.

16      18.    Meanwhile, however, Canyon attempted to extract from Evergreen a major

17  discount on a commercial lease Canyon had on real property owned and managed by a corporate

18  affiliate of Evergreen. When Canyon was not able to extract a sizeable enough discount on the

19  commercial lease, Canyon terminated the line of credit.

20      19.    On or about January 3, 2011, Canyon filed a lawsuit for breach of contract,

21  money lent, and account stated seeking damages in the amount of $994,523.72, which allegedly

22  represented the balance on the line of credit.

23      20.    Canyon's actions in terminating the line of credit and filing a lawsuit were

24  inconsistent with and plainly contrary to the parties' agreements, the promises and representations

25  Canyon had made to Evergreen, and the course of dealing and conduct of the parties.

26      21.    Canyon's actions have caused damage to Evergreen.

27  / / /

28  / / /

## FIRST CAUSE OF ACTION

### (Fraudulent Misrepresentation – Cross-complainants against Canyon)

22.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 21, inclusive, as though fully incorporated herein and made a part hereof.

23.     Canyon represented to Evergreen that the line of credit and the lending relationship would continue to be renewed automatically so long as there was no default.

24.     Canyon's representation was a material or important fact concerning the line of credit and the parties' continued lending relationship.

25.     Canyon knew that its representation was false or recklessly disregarded the truth.

26.     Canyon intended the representation to reach Evergreen, and intended the representation to induce Evergreen to act upon it.

27.     Evergreen reasonably and justifiably relied on the misrepresentation by continuing to make payments under the line of credit and continuing the lending relationship with Canyon.

28.     As a result of Canyon's representations, Evergreen has suffered substantial harm, including as a result of paying down the line of credit, continuing the lending relationship when it otherwise would have sought to establish a lending relationship with a different lender, and the economic costs of Canyon's improper termination of the line of credit.

29.     Evergreen's reliance was a substantial factor in causing the harm..

## SECOND CAUSE OF ACTION

### (Negligent Misrepresentation – Cross-complainants against Canyon)

30.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 29, inclusive, as though fully incorporated herein and made a part hereof.

/ / /

/ / /

4

CROSS-COMPLAINT

1        31.     Canyon represented to Evergreen, through its words and actions, that the line

2  of credit and the lending relationship would continue to be renewed automatically so long as there

3  was no default.

4        32.     Canyon's representations to Evergreen were not true, and Canyon had no

5  reasonable grounds for believing the representations to be true when they were made.

6        33.     Canyon intended Evergreen to rely on its representations and to continue

7  paying down the line of credit and the lending relationship with Canyon.

8        34.     Evergreen reasonably relied on Canyon's representations and continued

9  paying down the line of credit and the lending relationship with Canyon when it otherwise would

10  not have done so.

11        35.     Canyon's representations caused Evergreen to suffer substantial losses,

12  including as a result of paying down the line of credit, continuing the lending relationship when it

13  otherwise would have sought to establish a lending relationship with a different lender, and the

14  economic costs of Canyon's improper termination of the line of credit.

15        36.     Evergreen's reliance on Canyon's representations was a substantial factor in

16  causing the harm to Evergreen.

17                              **THIRD CAUSE OF ACTION**

18           **(Breach of Oral Contract – Cross-complainants against Canyon)**

19        37.     Cross-complainants reallege and incorporate herein by reference each and

20  every allegation contained in paragraphs 1 through 36, inclusive, as though fully incorporated

21  herein and made a part hereof.

22        38.     There was, by the words of the parties, an oral contract that the line of credit

23  would continue to be renewed automatically absent any default by Evergreen.

24        39.     Evergreen has at all times performed the terms of the contract in the manner

25  specified, or was excused in any alleged non-performance.

26        40.     Canyon failed and refused, and continues to refuse, to tender its performance

27  as required by the contract.  This includes that Canyon breached the contract by refusing to renew

28  and thereafter terminating the line of credit.

10015.001 - 181811.1

1    41.    Canyon's failure and refusal to perform its obligations under the contract has

2  directly damaged Evergreen because Evergreen now must defend against the lawsuit brought by

3  Canyon, and expend additional resources trying to find another lender to extend a line of credit on

4  equivalent or better terms.

5    42.    As a result of Canyon's breaches, Evergreen is entitled to, among other things,

6  compensation for the expenses it has incurred and will incur in order to attain the benefits of

7  performance equivalent to the terms of the line of credit prior to Canyon's breach.

8  ## FOURTH CAUSE OF ACTION

9  ### (Breach of Implied Contract – Cross-complainants against Canyon)

10    43.    Cross-complainants reallege and incorporate herein by reference each and

11  every allegation contained in paragraphs 1 through 42, inclusive, as though fully incorporated

12  herein and made a part hereof.

13    44.    There was, by the conduct of the parties, an implied contract that the line of

14  credit would continue to be renewed automatically absent any default by Evergreen.

15    45.    Evergreen has at all times performed the terms of the contract in the manner

16  specified, or was excused in any alleged non-performance.

17    46.    Canyon failed and refused, and continues to refuse, to tender its performance

18  as required by the contract.  This includes that Canyon breached the implied contract by refusing to

19  renew and thereafter terminating the line of credit.

20    47.    Canyon's failure and refusal to perform its obligations under the contract has

21  directly damaged Evergreen because Evergreen now must defend against the lawsuit brought by

22  Canyon, and expend additional resources trying to find another lender to extend a line of credit on

23  equivalent or better terms.

24    48.    As a result of Canyon's breaches, Evergreen is entitled to, among other things,

25  compensation for the expenses it has incurred and will incur in order to attain the benefits of

26  performance equivalent to the terms of the line of credit prior to Canyon's breach.

27  / / /

28  / / /

## FIFTH CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing – Cross-complainants against**

**Canyon)**

49.     Cross-complainants reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 48, inclusive, as though fully incorporated herein and made a part hereof.

50.     There was implied in the line of credit a covenant of good faith and fair dealing whereby Canyon impliedly covenanted that it would in good faith and in the exercise of fair dealing deal with Evergreen fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Evergreen's rights, as well as an understanding that the line of credit would continue to renew automatically so long as there was no default.

51.     As alleged herein, Canyon breached the covenant by its acts, including but not limited to, the acts set forth above, and, in addition:

a.     Misrepresented to Evergreen that the line of credit would automatically renew each year in furtherance of a long term lending relationship;

b.     Failed to give sufficient notice before terminating the line of credit and filing a lawsuit against Evergreen;

c.     Failed to consider and/or negotiate in good faith concerning renewal of the line of credit; .

d.     Evaded the spirit of the bargain Evergreen had made with Canyon; and

e.     Unfairly conditioned renewal of the line of credit on a significant and unwarranted discount for an existing commercial lease in which Canyon was the tenant and a corporate affiliate of Evergreen the landlord.

52.     Evergreen has performed all conditions, covenants and promises required by it on its part to be performed in accordance with the terms and conditions of the line of credit, except for those it was prevented from performing or which were waived or excused by Canyon's actions and misconduct.

///

10015.001 - 181811.1

1       53.      As a proximate result of Canyon's wrongful conduct and breach of the

2  covenant of good faith and fair dealing, Evergreen has been damaged in an amount to be proven at

3  trial.

### SIXTH CAUSE OF ACTION

5  **(Promissory Estoppel – Cross-complainants against Canyon)**

6       54.      Cross-complainants reallege and incorporate herein by reference each and

7  every allegation contained in paragraphs 1 through 53, inclusive, as though fully incorporated

8  herein and made a part hereof.

9       55.      Canyon promised during the lending relationship that it would work with

10  Evergreen toward a long term relationship, and that the line of credit would continue to renew.

11      56.      Evergreen relied on those promises in continuing to pay down the principal on

12  the line aggressively and continuing to work with Canyon.  Absent Canyon's promises, Evergreen

13  would not have agreed to the extension and paid down the loan aggressively, and would have

14  established another line of credit on equivalent or better terms with another lender.

15      57.      Evergreen's reliance was both reasonable and foreseeable.

16      58.      Canyon refused to renew the line of credit and wrongfully terminated it after

17  promising not to do so and after accepting Evergreen's continued monthly principal and interest

18  payments.

19      59.      As a proximate result of Evergreen's reliance on Canyon's promises,

20  Evergreen has suffered substantial detriment and has been damaged in an amount to be proven at

21  trial.

22      60.      Injustice can be avoided only by enforcement of Canyon's promises.

### PRAYER

24  **WHEREFORE**, cross-complainants pray for judgment as follows:

25      1.      Compensatory damages in an amount to be proven at trial, together with interest.

26      2.      Punitive damages in such sum as the court may determine, but in no event less

27  than double the amount of actual damages.

28      3.      Costs of this action and reasonable attorneys' fees.

1    4.    Any alternative and additional relief as the Court deems proper.

2

3    DATED: February 28, 2011                CAPPELLO & NOËL LLP

4

5                                            By: _____
                                             A. Barry Cappello
6                                            Lawrence J. Conlan
                                             Attorneys for
7                                            Defendants and Cross-complainants
                                             Evergreen Capital Trust, Michael J. Corliss,
8                                            Martin D. Waiss, and Evergreen Capital
                                             Partners, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10015.001 - 181811.1

1

2          **DEMAND FOR JURY TRIAL**

3    Defendants/Cross-complainants demand a trial by jury of all issues so triable in this action.

4

5    DATED:  February 28, 2011                    CAPPELLO & NOËL LLP

6                                           By:

7                                                A. Barry Cappello
                                                 Lawrence J. Conlan
8                                                Attorneys for
                                                 Defendants and Cross-complainants
9                                                Evergreen Capital Trust, Michael J. Corliss,
                                                 Martin D. Waiss, and Evergreen Capital
10                                               Partners, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              10
                                       CROSS-COMPLAINT

10015.001 - 1818111

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

3

4

5

I am employed in the County of Santa Barbara, State of California. I am over the age of 18 years and not a party to this action. My business address is 831 State Street, Santa Barbara, California 93101. On February 28, 2011, I served the foregoing document described as **CROSS-COMPLAINT** on the interested parties in this action:

6

SEE ATTACHED SERVICE LIST

7

8

9

10

☒   **BY U.S. POSTAL SERVICE:** This document was served by United States mail. I enclosed the document in a sealed envelope or package addressed to the person(s) at the address(es) above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Santa Barbara, California, in a sealed envelope with postage fully paid.

11

12

☐   **BY FACSIMILE:** The document(s) were served by facsimile. The facsimile transmission was without error and completed prior to 5:00 p.m. A copy of the transmission report is available upon request.

13

14

15

☐   **BY OVERNIGHT DELIVERY:** The document(s) were served by overnight delivery via FedEx. I enclosed the document in a sealed envelope or package addressed to the person(s) and the address(es) above and placed the envelope(s) for pick-up by FedEx. I am readily familiar with the firm's practice of collection and processing correspondence on the same day with this courier service, for overnight delivery.

16

17

18

☐   **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

19

20

☐   **BY HAND DELIVERY:** The document(s) were delivered by hand during the normal course of business, during regular business hours.

21

☐   (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23

☐   (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

24

Executed on February 28, 2011, at Santa Barbara, California.

25

26

Tina Vanderhook

27

28

11

CROSS-COMPLAINT

10015.001 - 181811.1

**SERVICE LIST**

Joseph A. Gibbs                                     Attorneys for Plaintiff, Canyon National Bank
Sean M. Swinford
Joseph A. Gibbs & Associates
74900 Highway 111, Suite 222
Indian Wells, CA  92210
Fax:  (760) 779-1780

12
CROSS-COMPLAINT

10015.001 - 181811.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "F"

# Riverside Superior Court

## PUBLIC ACCESS

Print This Report

Close This Window

### Minute Order

#### Case INC1100035 - CANYON NATIONAL BANK VS. MICHAEL J. CORLISS, ET AL

#### HEARING RE: MOTION TO/FOR SUBSTITUTE PACIFIC PREMIER BANK IN PLACE OF CANYON NATIONAL BANK AS PLAINTIFF BY PACIFIC PREMIER BANK
#### 06/09/2011 8:30 AM DEPT. 2G

HONORABLE HAROLD W HOPP, PRESIDING
CLERK: B. WILLEFORD
COURT REPORTER: J. CROW
FEDERAL DEPOSIT INSURANCE CORPORATION REPRESENTED BY/IN LESLIE T. RIASANOVSKY VIA COURT CALL
NO APPEARANCE MADE BY OR FOR DEFENDANTS.
MOTION TO SUBSTITUTE PACIFIC PREMIER BANK GRANTED.
FORMAL ORDER TO BE PREPARED, SERVED AND SUBMITTED BY COUNSEL FOR MOVING PARTY PURSUANT TO CRC 3.1312
PRINT MINUTE ORDER

Riverside Public Access 5.6.26 © 2011 ISD Corporation. All Rights Reserved. www.isd-corp.com
Contact Us